David L. Nicholson, Jefferson Circuit Clerk
600 West Jefferson Street
Louisville, KY 40202-4731

EVANSTON INSURANCE CO.
10 PARKWAY NORTH
DEERFIELD, IL 60015

# RECEIVED

SEP 1 4 2018

Law Dept.



## KCOJ eFiling Cover Sheet

Case Number: 18-CI-005229

Envelope Number: 1202678

Package Retrieval Number: 12026788804711@00000880731

Service by: Certified Mail

Service Fee:  $ 0.00

Postage Fee: $ 15.13

The attached documents were generated via the Kentucky Court of Justice eFiling system. For more information on eFiling, go to http://courts.ky.gov/efiling.



CERTIFIED MAIL

7018 1130 0001 2742 0625

Generated: 9/7/2018 4:05:59 PM

**EXHIBIT A**



| AOC-E-105<br>Rev. 9-14 | Sum Code: CI | | Case #: **18-CI-005229** |
|---|---|---|---|
| Commonwealth of Kentucky<br>Court of Justice    Courts.ky.gov | | | Court:    **CIRCUIT** |
| CR 4.02; Cr Official Form 1 | | | County: **JEFFERSON Circuit** |

## CIVIL SUMMONS

*Plantiff*, **IHEALTH SOLUTIONS, LLC VS. EVANSTON INSURANCE CO.**, *Defendant*

TO:  **EVANSTON INSURANCE CO.**
    **10 PARKWAY NORTH**
    **DEERFIELD, IL 60015**

Memo:  Registered Agent of Service exists.

The Commonwealth of Kentucky to Defendant:

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

    /s/ David L. Nicholson, Jefferson Circuit Clerk
    Date: **09/07/2018**

---

### Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

    To: _____

☐ Not Served because: _____

Date: _____, 20_____

    _____
                           Served By

    _____
                           Title

---

Summons ID: 12026788804711@00000880731
CIRCUIT: 18-CI-005229 Certified Mail
IHEALTH SOLUTIONS, LLC VS. EVANSTON INSURANCE CO.

 Page 1 of 1

*eFiled*

*Package-000002 of 000085*

*Presiding Judge: HON. ANN BAILEY SMITH (630350)*

*Package - 000002 of 000085*

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

CASE NO. _____                        JEFFERSON CIRCUIT COURT
                                        DIVISION _____ ( )
                                JUDGE _____

iHEALTH SOLUTIONS, LLC                                      PLAINTIFF
500 W. Jefferson, Suite 2310
Louisville, KY  40202

                        *Electronically Filed*

v.

                          **COMPLAINT**

EVANSTON INSURANCE CO.                                      DEFENDANT

Serve:  Bryan William Snider
        10 Parkway North,
        Deerfield, IL 60015


        The Plaintiff, iHealth Solutions, LLC ("**iHealth**"), by undersigned counsel, for its

Complaint against the Defendant, Evanston Insurance Co. ("**Evanston**"), states as

follows:

### I.     INTRODUCTION

        1.      This is a claim to recover under a policy of insurance issued by the

Defendant, Evanston to the Plaintiff, iHealth.  This is also a claim for first-party bad faith

under Kentucky law.

### II.     JURISDICTION

        2.      This Court has jurisdiction and venue over this action in that the insurance

policy in question was issued to a Kentucky citizen, iHealth, whose operations are located

in Louisville, Kentucky, and the amount in controversy exceeds this Court's jurisdictional

minimum.

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Filed        18-CI-005229    09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

### III.    PARTIES

3.      iHealth Solutions, LLC is a Kentucky LLC whose principal place of business is located in Louisville, Kentucky.

4.      Evanston Insurance Co. is an Illinois insurance company doing substantial business in the Commonwealth of Kentucky.  It is not licensed in Kentucky.

### IV.    BACKGROUND

5.      On or about March of 2017, a contract of insurance was issued by Evanston to iHealth for the period March 31, 2017 to March 31, 3018.  See **Exhibit A** (the "**Policy**")

6.      The Policy provided coverage for professional liability and data breach claims.

7.      iHealth paid the required Policy premium in the amount of $10,923 and performed all other requirements under the Policy, including providing formal notice of loss on or about July 13, 2017.  See **Exhibit B.**

8.      The "loss" arose out of a data breach that occurred on or about May 2 to May 3, 2017.

9.      On the morning of May 4, 2017, iHealth contacted its legal counsel, Wyatt Tarrant and Combs, LLP about the breach.  It also contacted its local insurance broker, Richard P. Lewis, at Robert H. Clarkson Insurance, an agent for Evanston, who notified Markel Services ("**Markel**"), another Evanston agent, about the loss.

10.     Markel acknowledged the receipt of the iHealth claim by a letter dated May 5, 2017.

11.     On or shortly after May 8, 2017, Markel approved of iHealth's engagement of the Wyatt firm with respect to the data breach.

Filed        18-CI-005229    09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Package:000004 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package: **000004 of 000085**

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

12.     The loss in question arose as a result of services performed by iHealth for BronxCare Health System ("**BronxCare**"), which services were covered by the insurance issued by Evanston.

13.     To rectify the data breach iHealth took all reasonable and necessary steps as outlined in its proof of loss, dated July 13, 2017.  <u>See</u> **Exhibit B.**

14.     Notwithstanding iHealth's full compliance with the terms of the Policy, Evanston through Markel has refused to pay the amounts due under the Policy including approximately $91,000 in approved attorney's fees and approximately $146,000 in damages which are claimed against iHealth by BronxCare as a result of the data breach.

15.     On December 20, 2017 after iHealth had demanded payment on numerous occasions, iHealth received a letter from a Chicago law firm, apparently not authorized to practice law in Kentucky.  The law firm, also an agent of Evanston, in 25 single-spaced pages, alleged that iHealth had incurred legal expenses without prior consent, that the costs incurred were not reasonable and necessary, and that iHealth's claim was "predicated entirely upon contractual indemnification provisions with its health client" – all false and fraudulent statements as Evanston well knew.  As a result Evanston denied it had a duty to defend or indemnify the BronxCare claims.  <u>See</u> **Exhibit C**.

16.     The actions of Evanston and its various agents violated KRS 304.12-230.

### V.     CLAIMS

**COUNT I:     <u>BREACH OF CONTRACT AND DECLARATION OF RIGHTS</u>**

17.     iHealth restates the allegations contained in Paragraphs 1-16.

18.     The actions of Evanston and its agents constitute breach of contract entitling iHealth to the amounts due under the Policy to satisfy the claims of BronxCare,

3

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229      09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

including attorney's fees for the counsel agreed to by the Evanston agents as well as a declaration of iHealth's rights as necessary under the Policy.

### COUNT II:    BAD FAITH; UNFAIR CLAIM SETTLEMENT PRACTICES

19.     iHealth restates the allegations contained in paragraphs 1 -18.

20.     Evanston's' delay in paying the claims in question in a timely fashion, its misrepresentation of coverage, and its forcing iHealth to file suit in order to recover its rightfully due payments constitutes bad faith and/or unfair claims settlement practices as prohibited under KRS 304.12-230 and Kentucky law.

21.     As a result, iHealth is entitled to recover all amounts due under the Policy plus the attorney's fees incurred in prosecuting this litigation plus bad faith damages and/or punitive damages because the actions of Evanston and/or its agents were carried out willfully and maliciously.

WHEREFORE, the Plaintiff, iHealth Solutions, LLC demands as follows:

1. A judgment in a substantial amount in excess of this Court's jurisdictional minimum, including approximately $146,000 of damages claimed by iHealth's client and approximately $91,000 in attorney's fees;

2. Attorney fees in this action;

3. Bad faith/punitive damages;

4. Its costs herein expended; and

5. Any and all further relief to which it may appear properly entitled.

Package:000006 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000006 of 000085

4

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

/s/ Donald L. Cox
Donald L. Cox
Matthew P. Cox
**LYNCH, COX, GILMAN & GOODMAN, P.S.C.**
500 West Jefferson Street, Suite 2100
Louisville, KY 40202
Telephone: (502) 589-4215
doncox@lynchcox.com
mcox@lynchcox.com
Counsel for the Plaintiff, iHealth Solutions, LLC

Package:000007 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000007 of 000085

5

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT A

Package : 000008 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : **000008 of 000085**

Filed         18-CI-005229     09/07/2018           David L. Nicholson, Jefferson Circuit Clerk

A STOCK COMPANY



# EVANSTON INSURANCE COMPANY

Ten Parkway North
Deerfield, IL 60015

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

**Secretary**

**President**

*Package:000009 of 000085*

*Presiding Judge: HON. ANN BAILEY SMITH (630350)*

*Package : 000009 of 000085*

MJIL 1000 06 10

Filed        18-CI-005229     09/07/2018         David L. Nicholson, Jefferson Circuit Clerk
Page 1 of 1

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk



**MARKEL**

## POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

RE:   Policy Number: EO866785
     Insured:   I HEALTH SOLUTIONS, LLC
     Insurer:   EVANSTON INSURANCE COMPANY

You are hereby notified that under the Terrorism Risk Insurance Act as amended in 2015 the definition of terrorism has changed. As *defined in Section 102(1) of the Act:* The term "act of terrorism" means any act that is certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under the Act, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. The Act requires Evanston Insurance Company to also notify you that Terrorism Coverage required to be offered by the Act for losses caused by certified acts of terrorism is partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

The Terrorism Risk Insurance Act as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Nothing in this notice affects or modifies your coverage except and only to the extent specifically required by the Act.

Certified Acts of Terrorism coverage is provided for no additional premium.

Package:000010 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000010 of 000085

**ZZ-50000 01 15**                                                                                 Page 1 of 1

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

**MARKEL**

# EVANSTON INSURANCE COMPANY

## DECLARATIONS – SPECIFIED PROFESSIONS PROFESSIONAL LIABILITY INSURANCE POLICY

**Claims Made:** Under certain Coverage Parts of this policy, the coverage afforded is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company pursuant to the terms herein. Refer to each Coverage Part's opening page to determine if that Coverage Part is Claims Made.

**Notice:** This is a duty to defend policy. Additionally, all Coverage Parts of this policy contain provisions that reduce the Limits of Liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless otherwise endorsed. Please read the policy carefully.

POLICY NUMBER:  EO866785                        RENEWAL OF POLICY:  EO863111

1.  **NAMED INSURED:**    I HEALTH SOLUTIONS, LLC

2.  **BUSINESS ADDRESS:**    462 S 4TH ST STE 1810

    LOUISVILLE, KY  40202

3.  **POLICY PERIOD:**    From 03/31/2017 to 03/31/2018
    12:01 A.M. Standard Time at address of Insured stated above

4.  **SPECIFIED PROFESSIONAL SERVICES, PRODUCTS, GOODS, OPERATIONS OR PREMISES:**

    **For Coverage A.**  Specified Professional Services:    Medical billing, coding, receivables management and practice management consulting

    **For Coverage C.**  Specified Products, Goods, Operations or Premises:    Not Purchased

## IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| Producer Number, Name and Address |
| --- |
| 13492<br>Cincinnati Intermediaries, Inc.<br>3975 Erie Avenue<br>Cincinnati, OH  45208 |

Package:000011 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000011 of 000085

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

**5.   COVERAGE SCHEDULE:**

This policy includes only those Coverage Parts designated below by "X" as purchased. If a Coverage Part is not expressly designated as purchased, this policy does not include such Coverage Part.

| Coverage Part | Coverage Part Purchased | Coverage Part Limits of Liability | Coverage Part Deductible | Coverage Part Retroactive Date |
|---|---|---|---|---|
| **A.** Professional Liability Insurance Coverage Part | Yes __X__ | $1,000,000 Each Claim | $2,500 Each Claim | 03/31/2014 |
| | | $1,000,000 Aggregate | $7,500 Aggregate | |
| **B.** DataBreach$^{SM}$ Insurance Coverage Part | Yes __X__ No _____ | $1,000,000 Coverage B.1. Each Claim | $2,500 Coverage B.1 Each Claim | 03/31/2014 Coverage B.1 |
| | | $1,000,000 Coverage B.2. Each Unauthorized Access | $2,500 Coverage B.2. Each Unauthorized Access | |
| | | $1,000,000 Aggregate | | |
| | | $50,000 Supplementary Payments A. Breach Mitigation Expense | | |
| **C.** General Liability Insurance (Claims Made) Coverage Part | Yes _____ No __X__ | Not Purchased Coverage C.1. Each Occurrence | Not Purchased Coverage C.1. Each Occurrence | Not Purchased Coverage C.1. and Coverage C.2. |
| | | Not Purchased Damage to Premises - Any One Premises | | |
| | | Not Purchased Coverage C.2. Each Person or Organization | Not Purchased Coverage C.2. Each Person or Organization | |
| | | Not Purchased Coverage C.3. Each Person | | |
| | | Not Purchased Aggregate Limit of Liability | | |

Package : 000012 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000012 of 000085

Filed       18-CI-005229   09/07/2018       David L. Nicholson, Jefferson Circuit Clerk

**6.   Coverage Parts Which Share an Aggregate Limit of Liability**
[X]  **A.**  Professional Liability Insurance Coverage Part
[X]  **B.**  DataBreach<sup>SM</sup> Insurance Coverage Part
[ ]  **C.**  General Liability Insurance (Claims Made) Coverage Part
[ ]  **NONE**

**7.   Combined Aggregate Limit of Liability**
$1,000,000   All Damages, Regulatory Fines, Breach Mitigation Expenses, Loss and Claim Expenses under all purchased Coverage Parts, combined.

| | | |
|---|---|---|
| Surcharge: | $196.61 |
| Municipal Tax: | $546.15 |
| Collection Fee: | $81.92 |
| Surplus Lines Tax: | $327.69 |

**8.   PREMIUM FOR POLICY PERIOD:**       $10,923.00

**9.   PREMIUM FOR EXTENDED REPORTING PERIOD:**  100% for 12 months; 150% for 24 months, or 200% for 36 months

**10.   ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**
See MDIL 1001 08 10 attached.

**11.   NOTICES:**

Notices required to be provided to the Company under this policy shall be by email, fax or mail addressed to:

**CLAIM, POTENTIAL CLAIM AND LOSS NOTICES:**
E-mail: newclaims@markelcorp.com
Fax: (855) 662-7535

Claims Service Center
Markel Service, Incorporated
Ten Parkway North
Deerfield, Illinois 60015

**ALL OTHER NOTICES:**

Markel Midwest Region, a division of Markel Service, Incorporated
Ten Parkway North
Deerfield, IL  60015-2526
Telephone: (847) 572-6000
Fax: (866) 730-2526

This insurance has been placed with an insurer not licensed to transact business in the Commonwealth of Kentucky but eligible as a surplus lines insurer. The insurer is not a member of the Kentucky Insurance Guaranty Association. Should the insurer become insolvent, the protection and benefits of the Kentucky Insurance Guaranty Association are not available.

**These declarations, together with the Common Policy Conditions, Coverage Part(s), any Endorsement(s) and any application(s) complete the above numbered policy.**

| | |
|---|---|
| Countersigned: 4/7/2017 | By: _[signature]_ |
| (Date) | AUTHORIZED REPRESENTATIVE |

Filed       18-CI-005229   09/07/2018       David L. Nicholson, Jefferson Circuit Clerk

Package: 000013 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000013 of 000085

Filed        18-CI-005229    09/07/2018        David L. Nicholson, Jefferson Circuit Clerk



# Markel's Designed Protection®
# Risk Management Resources For
# Specified Professions

Welcome to Markel's Designed Protection® leading edge Risk Management Resources.

The following risk management resources are available exclusively to our policyholders at our website at *no additional cost.*

## HOW TO QUICKLY ACCESS RISK MANAGEMENT RESOURCES:

Step 1.    Go onto our website, www.markelcorp.com/riskmanagement.

Step 2.    Enter your current policy number and click below to access. Your policy number is EO866785.

If you need technical assistance during the log in process, call (866) 932-2433, x113719.

## Available Risk Management Resources include:

**Designed Protection® Risk Management Telephone Hotline for Professional Service Providers**
This confidential telephone hotline is staffed by a panel of risk management experts that are available to answer general risk management questions.

**Designed Protection® for Professional Services Firms – Leading Edge Strategies for Effective Risk Management**
This Guide provides information about principles of effective risk management including client satisfaction, billing practices and prompt and effective action in the event of an error or omission.

**Top 10 Tips for Liability Loss Avoidance for Professional Services Providers**
A concise, bullet point summary of 10 liability risk avoidance strategies.

Please check our website regularly as additional resources are added throughout the year

Presiding Judge: HON. ANN BAILEY SMITH (630550)

Package: 000014 of 000085          Package:000014 of 000085

Filed          18-CI-005229     09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

**POLICY NUMBER**: EO866785

**MARKEL**

# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| FORM NUMBER | FORM NAME |
|---|---|
| MJIL 1000 06 10 | Policy Jacket |
| ZZ-50000 01 15 | Policyholder Disclosure of Terrorism Insurance Cov |
| MDEO 5000 11 14 PLDB | Declarations - Spec Professions Prof Liab Ins Plcy |
| MDIL 1001 08 10 | Forms Schedule |
| MEEO 5700 11 14 | Common Policy Conditions |
| MEEO 5000 11 14 | Professional Liab Ins Cov Part for Spec Prof |
| MEEO 5001 11 14 | Databreach Ins Cov Part for Spec Prof |
| IL 12 01 11 85 A | Policy Changes (Additional Named Insured) |
| MEIL 5200-25% 07 04 | Minimum Earned Premium Endorsement |
| ZZ-42001-04 01 15 | Certified Acts of Terrorism Endorsement |

Package:000015 of 000085

Presiding Judge: HON: ANN BAILEY SMITH (630350)

Package : **000015 of 000085**

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson **PROFESSIONAL** INTERLINE

**MARKEL**

# EVANSTON INSURANCE COMPANY

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

Throughout this policy, the term Company refers to the insurance company providing this insurance.

### A. TERMS AND CONDITIONS

This policy is comprised of these Common Policy Conditions, the Declarations, various Coverage Parts and endorsements, if applicable, and the application. Although various Coverage Parts may be referenced in this policy, a Coverage Part is included within this policy only if that Coverage Part is stated as being purchased in the Coverage Schedule in item 5. of the Declarations.

Except for these Common Policy Conditions or unless stated to the contrary in any Coverage Part or endorsement, the terms and conditions of each Coverage Part of this policy apply only to that Coverage Part and shall not apply to any other Coverage Part of this policy. Any defined term referenced in the Common Policy Conditions but defined in a Coverage Part shall, for purposes of coverage under that Coverage Part, have the meaning set forth in that Coverage Part. If any provision in the Common Policy Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part.

### B. POLICY AGGREGATE LIMIT OF LIABILITY

1. Coverage Parts Which Share an Aggregate Limit of Liability

   Notwithstanding the Limits of Liability of any single purchased Coverage Part, the Company's maximum aggregate Limit of Liability for all Damages, Regulatory Fines, Breach Mitigation Expenses, Loss and Claim Expenses covered under all purchased Coverage Parts which share an Aggregate Limit of Liability, as stated in Item 6. of the Declarations, shall be the larger(est) amount stated in Item 5. of the Declarations as the Aggregate Limit of Liability for such Coverage Parts which share an Aggregate Limit of Liability. Such shared Limit of Liability shall be part of and not in addition to the Combined Aggregate Limit of Liability as stated in Item 7. of the Declarations. This paragraph further limits the Company's maximum liability under each such Coverage Part and does not increase the respective separate Limit of Liability for each Coverage Part.

2. Combined Aggregate Limit of Liability

   The amount stated in Item 7. of the Declarations shall be the Company's maximum aggregate liability for the combined total of all Damages, Regulatory Fines, Breach Mitigation Expenses, Loss and Claim Expenses covered under all purchased Coverage Parts, combined.

### C. SINGLE LIMIT AND DEDUCTIBLE

The inclusion herein of more than one Insured in any Claim or the making of Claims by, or reporting of Loss incurred by more than one person or organization or under more than one purchased Coverage Part of this policy, shall not operate to increase the Limits of Liability stated in this Policy.

It is the intent of the Company that the coverage afforded under the Coverage Parts be mutually exclusive. If however, it is determined that more than one purchased Coverage Part applies to one Claim or Loss, then the limit of liability with respect to such Claim or Loss shall be the larger(est) limit of liability available under the applicable purchased Coverage Parts and not the sum of the limits available under the applicable purchased Coverage Parts. In such event, the smaller(est) of the applicable deductibles for the applicable purchased Coverage Parts will apply and not the sum of such deductibles.

### D. CANCELLATION

This policy may be cancelled by the Named Insured on behalf of all Insureds by mailing to the Company written notice as stated in Item 11. of the Declarations stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the Company shall retain the customary short rate proportion of the premium. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Package : 000016 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : **000016 of 000085**

Filed          18-CI-005229   09/07/2018       David L. Nicholson, Jeffe                    PROFESSIONAL INTERLINE

This policy may be cancelled by the Company, by mailing to the Named Insured, at the address stated in Item 2. of the Declarations, written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Named Insured has failed to pay a premium or Deductible when due, including premium, deductible(s) and/or co-insurance obligations(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement, this policy may be cancelled by the Company, by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Such notice shall be conclusive on all Insureds. Delivery of such written notice by the Named Insured or the Company shall be equivalent to mailing. If cancelled by the Company earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

## E.   REPRESENTATIONS

By acceptance of this policy, the Insureds agree as follows:

1.   That the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

2.   That the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth of such representations.

## F.   ENTIRE AGREEMENT

The Declarations, Common Policy Conditions, Coverage Part(s), any written endorsements and any application(s) shall be deemed to be a single unitary contract.

## G.   OTHER INSURANCE

This insurance shall be in excess of the applicable Deductible stated in the Declarations and any other insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

If any Claim under this policy is also covered by one or more policies issued by the Company or any of its affiliated companies affording coverage to the Named Insured or to any organization or person who controls, is controlled by, or is affiliated by common control with the Named Insured unless such other insurance is written only as specific excess insurance or umbrella insurance over the Limits of Liability provided in this policy, then with respect to such Claim:

1.   The Limit of Liability available under this policy will be equal to the percentage that this policy's available Limit of Liability bears to the total combined Limits of Liability available under all applicable policies; and

2.   The total Limit of Liability available for such Claim shall not exceed the greater(est) available Limit of Liability remaining on all such policies and its payment shall extinguish the Company's and its affiliated companies' liability on all such policies for such Claim.

## H.   CHANGES

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy and shall not estop the Company from asserting any right under the terms of the policy. The terms of this policy shall not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the Insureds and the Company or any of its agents relating to this insurance.

## I.   ASSIGNMENT OF INTEREST

Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

## J.   SUBROGATION

In the event of any payment under this policy, the Company shall be subrogated to the right of recovery of all Insureds to the extent of such payment. The Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the Claim to prejudice such rights.

The Company shall not exercise any such rights against any person or organization included in the definition of Insured. Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an Insured in respect of any Claim brought about or contributed to by an intentional, willful, dishonest, fraudulent act or

Filed          18-CI-005229    09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

omission of such Insured or by an act or omission of such Insured that constitutes a willful violation of any statute or regulation.

Any amount so recovered, whether effected by the Company or by the Insured, shall first be used for the repayment of expenses incurred toward subrogation; second, for any Damages, Regulatory Fines, Breach Mitigation Expenses, Loss and Claim Expenses payment by the Insured which is in excess of the amount of the Limit of Liability under this policy and which is excess of any amount paid by any insurer under any other policy; third, for any damages, regulatory fines, breach mitigation expenses, loss and claims expenses payment by any excess carrier on behalf of the Insured; fourth, for any damages, regulatory fines, breach mitigation expenses, loss and claim expenses payment by any primary carrier on behalf of the Insured; and, last, for repayment of the Insured's Deductible.

## K. ASSISTANCE AND COOPERATION OF THE INSURED

The Insured shall cooperate with the Company and upon the Company's request, the Insured shall:

1. Submit to examination and interview by a representative of the Company and while not in the presence of any other Insured, under oath if required;

2. Attend hearings, depositions and trials;

3. Assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits;

4. Give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim; and

5. Provide any information required to comply with federal or state reporting regulations;

All without cost to the Company, other than expense reimbursement provided under Section Supplementary Payments. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have.

The Insured shall not, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur any expense without the prior written consent of the Company, such consent not to be unreasonably withheld. Any costs and expenses incurred by the Insured prior to the Insured giving written notice of a Claim to the Company shall be borne by the Insured and will not constitute satisfaction of the Deductible.

## L. FALSE OR FRAUDULENT CLAIMS

If any Insured shall commit fraud in proffering any Claim, this insurance shall become void from the date such fraudulent Claim is proffered.

## M. INSPECTION

The Company shall be permitted but not obligated to inspect the Insured's operations at any time. Neither the Company's right to make inspections, nor the making thereof, nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Insured or others, to determine or warrant that such operations are safe or healthful, or are in compliance with any law, rule or regulation.

## N. ACTION AGAINST THE COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms and conditions of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

## O. AUTHORIZATION

By acceptance of this policy, the first person or organization named in Item 1. of the Declarations shall act on behalf of all Insureds with respect to the giving and receiving of all notices to and from the Company as provided herein; the exercising of the Extended Reporting Period, if available; the cancellation of this policy in whole or part; the payment of premiums and Deductibles when due; the receiving of any return premiums that may become due under this policy; and the Insureds agree that such person or organization shall act on their behalf. With respect to any coverage which provides for the

Filed          18-CI-005229    09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Package: 000018 of 000085    Presiding Judge: HON. ANN BAILEY SMITH (630350)    Package : 000018 of 000085

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

reimbursement or indemnification of the Named Insured, the first person or organization named in Item 1. of the Declarations shall act on behalf of all Named Insureds with regard to the receiving of such reimbursement or indemnification as provided, and the Named Insureds agree that such person or organization shall act on their behalf.

## P.   POLICY EXTENDED REPORTING PERIOD – ALL CLAIMS MADE COVERAGES

The Named Insured's right to exercise the Extended Reporting Period under any Coverage Part shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Coverage Parts that provide coverage on a claims made basis.

## Q.   SERVICE OF SUIT

Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## R.   NUCLEAR ENERGY LIABILITY EXCLUSION (Broad Form)

The insurance does not apply:

1.   Under any Liability Coverage, to Bodily Injury or Property Damage:

   a.   With respect to which an Insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   b.   Resulting from the Hazardous Properties of Nuclear Material and with respect to which **(1)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(2)** the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.   Under any Medical Payments coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to Bodily Injury resulting from the Hazardous Properties of Nuclear Material and arising out of the operation of a Nuclear Facility by any person or organization.

3.   Under any Liability Coverage, to Bodily Injury or Property Damage resulting from Hazardous Properties of Nuclear Material, if:

   a.   The Nuclear Material **(1)** is at any Nuclear Facility owned by, or operated by or on behalf of, an Insured or **(2)** has been discharged or dispersed therefrom;

   b.   The Nuclear Material is contained in Spent Fuel or Waste at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an Insured; or

   c.   The Bodily Injury or Property Damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any Nuclear Facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to Property Damage to such Nuclear Facility and any property thereat.

4.   As used in this exclusion:

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229      09/07/2018        David L. Nicholson, Jefferson Circuit Clerk
PROFESSIONAL INTERLINE

Hazardous Properties includes radioactive, toxic or explosive properties.

Nuclear Material means Source Material, Special Nuclear Material or By-Product Material.

Source Material, Special Nuclear Material, and By-Product Material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

Spent Fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a Nuclear Reactor.

Waste means any waste material (1) containing By-Product Material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its Source Material content, and (2) resulting from the operation by any person or organization of any Nuclear Facility included under the first two paragraphs of the definition of Nuclear Facility.

Nuclear Facility means:

a.  Any Nuclear Reactor;

b.  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing Spent Fuel, or (3) handling, processing or packaging Waste;

c.  Any equipment or device used for the processing, fabricating or alloying of Special Nuclear Material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d.  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of Waste;

And includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

Nuclear Reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

Property Damage includes all forms of radioactive contamination of property.

Package: 000020 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000020 of 000085

Filed   18-CI-005229   09/07/2018   David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

**MARKEL**

# EVANSTON INSURANCE COMPANY

# PROFESSIONAL LIABILITY INSURANCE COVERAGE PART
# FOR SPECIFIED PROFESSIONS

THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

THE INSURED ............................................................................................................ 2

INSURING AGREEMENT ............................................................................................ 3

SUPPLEMENTARY PAYMENTS ................................................................................ 3

DEFINITIONS .............................................................................................................. 4

THE EXCLUSIONS ..................................................................................................... 7

TERRITORY ................................................................................................................ 9

LIMITS OF LIABILITY ................................................................................................ 9

DEFENSE, SETTLEMENTS AND CLAIM EXPENSES ............................................. 10

CLAIMS ..................................................................................................................... 11

EXTENDED REPORTING PERIOD ........................................................................... 11

OTHER CONDITIONS ............................................................................................... 12

Package: 000021 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : **000021 of 000085**

Filed   18-CI-005229   09/07/2018   David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229    09/07/2018     David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

# Professional Liability Insurance Coverage Part
# For Specified Professions

THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to all the terms, conditions and limitations of this Coverage Part, the Company and the Insured agree as follows:

## THE INSURED

A.  The unqualified word "Insured," either in the singular or plural, means:

   1.  The Named Insured herein defined as the person(s) or organization(s) stated in Item 1. of the Declarations;

   2.  Any past or current principal, partner, officer, director, trustee or shareholder of the Named Insured stated in Item 1. of the Declarations solely while acting on behalf of the Named Insured and within the scope of their duties as such;

   3.  Any past or current employee, including a leased employee, of the Named Insured stated in Item 1. of the Declarations solely while acting on behalf of the Named Insured and within the scope of their duties as such;

   4.  Any natural person who is an independent contractor of the Named Insured solely while acting within their professional capacity on behalf of the Named Insured;

   5.  If the Named Insured stated in Item 1. of the Declarations is a limited liability company, the limited liability company so stated, any past or current manager thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as manager of such limited liability company and any past or current member thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as a member of such limited liability company;

   6.  The heirs, executors, administrators, assigns and legal representatives of each Insured in Items A.1.-5. above in the event of death, incapacity or bankruptcy of each such Insured but only for each such Insured's liability as is otherwise covered herein;

   7.  The lawful spouse or Domestic Partner of each Insured in Item A.2. above, but only for each such Insured's liability as is otherwise covered herein.

B.  Named Insured shall also include any organization, other than a partnership, joint venture or limited liability company, newly acquired or newly formed by the Named Insured stated in Item 1. of the Declarations, to perform the same Specified Professional Services as the Named Insured stated in Item 1. of the Declarations and as stated in the application attached to and made a part of this Coverage Part and over which the Named Insured stated in Item 1. of the Declarations maintains ownership or majority interest, provided there is no other similar insurance available to that organization. Coverage to such Named Insured shall be subject to the following:

   1.  Coverage for such organization is afforded only until sixty (60) days after the Named Insured stated in Item 1. of the Declarations acquired or formed the organization or the end of the Policy Period, whichever is earlier; and

   2.  The Retroactive Date applicable to any Claim or Disciplinary Proceeding against such organization newly acquired or newly formed by the Named Insured stated in Item 1. of the Declarations, for Wrongful Acts, Personal Injuries or offenses shall be the date on which the Named Insured stated in Item 1. of the Declarations acquired or formed such organization; and

   3.  No person or organization is an Insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

C.  If during the Policy Period a transaction occurs wherein another organization gains control of the Named Insured through the ownership of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of directors or equivalent position, or the Named Insured merges into another organization or consolidates with another organization such that the Named Insured is not the surviving organization, then:

   1.  The first Named Insured must give written notice of such transaction to the Company within sixty (60) days after the effective date of such transaction and provide the Company with such information in connection therewith as the Company may deem necessary;

Filed          18-CI-005229    09/07/2018     David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229    09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

2. This Coverage Part shall apply only to those Wrongful Acts, Personal Injuries and offenses which happened on or before the effective date of such transaction.

## INSURING AGREEMENT

**A. Coverage A - Professional Liability Coverage - Claims Made Coverage:**

The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5.A. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision,

By reason of:

1. A Wrongful Act; or

2. A Personal Injury;

In the performance of Specified Professional Services rendered or that should have been rendered by the Insured or by any person for whose Wrongful Act or Personal Injury the Insured is legally responsible,

Provided:

a. The entirety of such Wrongful Act(s) or Personal Injury(ies) happens during the Policy Period or on or after the applicable Retroactive Date stated in Item 5.A. of the Declarations and before the end of the Policy Period; and

b. Prior to the effective date of this Coverage Part the Insured had no knowledge of such Wrongful Act(s) or Personal Injury(ies) or any fact, circumstance, situation or incident, which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

## SUPPLEMENTARY PAYMENTS

**A. Disciplinary Proceeding Legal Fee and Legal Expense Reimbursement:** Upon submission to the Company of satisfactory written proof of payment by the Named Insured, the Company shall reimburse the Named Insured, up to twenty-five thousand dollars ($25,000) per Policy Period including the Extended Reporting Period, if exercised, for all reasonable and necessary legal fees and legal expenses incurred and paid by the Named Insured in response to a Disciplinary Proceeding against the Named Insured first initiated during the Policy Period, or the Extended Reporting Period, if exercised, provided:

1. The entirety of the Wrongful Act giving rise to the Disciplinary Proceeding happens during the Policy Period or on or after the applicable Retroactive Date stated in Item 5.A. of the Declarations and before the end of the Policy Period; and

2. Prior to the effective date of this Coverage Part the Insured had no knowledge of such Wrongful Act or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured's position to conclude that a Disciplinary Proceeding was likely.

The Named Insured shall give the Company written notice as stated in Item 11. of the Declarations as soon as practicable of any Disciplinary Proceeding first initiated against the Insured during the Policy Period or the Extended Reporting Period, if exercised. In any event, such Disciplinary Proceeding must be reported to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois 60015, on behalf of the Company, no later than sixty (60) days after the end of the Policy Period or the Extended Reporting Period, if exercised.

No reimbursement pursuant to this Section shall be made for the Named Insured's payment of any taxes; criminal or civil fines, penalties or sanctions; registration or licensing fees; or any monetary judgment, award or settlement of any kind.

Reimbursement to the Named Insured pursuant to this Section Supplementary Payments A. shall be in addition to the Limits of Liability stated in Item 5.A. of the Declarations and shall not be subject to the Deductible.

**B. Loss of Earnings and Expense Reimbursement:** Upon submission to the Company of satisfactory written proof of payment by the Named Insured, the Company shall reimburse the Named Insured as expense reimbursement for all reasonable and necessary expenses incurred by an Insured at the Company's written request for attendance at any arbitration, mediation, deposition, hearing or trial in connection with a Claim to which this Coverage Part applies. The

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

Named Insured shall give the Company written notice as stated in Item 11. of the Declarations of written proof of payment of expenses as soon as practicable. In any event, such written proof of payment must be reported to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois 60015, on behalf of the Company, no later than sixty (60) days after incurring such expenses.

The Company shall compensate the Named Insured for loss of earnings of an Insured a maximum of five hundred dollars ($500) per day for all Insureds to attend at the Company's written request any arbitration, mediation, deposition, hearing or trial in connection with a Claim to which this Coverage Part applies.

The maximum the Company shall pay the Named Insured for all Insureds for compensation of all loss of earnings and expense reimbursement for all Claims to which this Coverage Part applies and all attendances at the Company's written request is fifteen thousand dollars ($15,000).

Payments to the Named Insured pursuant to this Section Supplementary Payments B. shall be in addition to the Limits of Liability stated in Item 5.A. of the Declarations and shall not be subject to the Deductible.

C. **Electronic Media Injury Liability Coverage:** The Company shall pay on behalf of the Insured an amount up to a limit of $15,000 per Policy Period which the Insured shall become legally obligated to pay as Damages or Claim Expenses as a result of a Claim for Electronic Media Injury first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, provided:

1. The entirety of the offense, out of which such Electronic Media Injury arises, happens during the Policy Period or on or after the applicable Retroactive Date stated in Item 5.A. of the Declarations and before the end of the Policy Period; and

2. Prior to the effective date of this policy the Insured had no knowledge of such Electronic Media Injury or any offense, fact, circumstance, situation or incident which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

Payments to the Named Insured pursuant to this Section Supplementary Payments C. shall be in addition to the Limits of Liability stated in Item 5.A. of the Declarations and shall not be subject to the Deductible.

D. **Subpoena/Record Request Assistance:** In the event that during the Policy Period:

1. The Insured first receives a subpoena or a written request for the Insured's records or files or notice of deposition relative to a Wrongful Act or a Personal Injury in the performance of Specified Professional Services rendered or that should have been rendered by the Insured or by any person or organization for whose Wrongful Act or Personal Injury the Insured is legally responsible; and

2. The Insured reports the receipt of such subpoena or request in writing to the Company as stated in Item 11. of the Declarations within thirty (30) days of such receipt and prior to a Claim being first made against the Insured arising out of such Wrongful Act or Personal Injury;

Then the Company shall pay on behalf of the Insured, up to five thousand dollars ($5,000) per Policy Period for reasonable and necessary legal fees and legal expenses incurred for engaging the services of legal counsel selected by the Company to assist the Insured in responding to such subpoena or request.

Payment on behalf of the Insured pursuant to this Section Supplementary Payments D. shall be in addition to the Limits of Liability stated in Item 5.A. of the Declarations and shall not be subject to the Deductible.

## DEFINITIONS

A. **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these; provided, however, Bodily Injury does not include humiliation or the infliction of emotional distress arising solely from Electronic Media Injury.

B. **Claim** means the Insured's receipt of:

1. A written demand for money damages or remedial Specified Professional Services involving this Coverage Part, including a written demand that the Insured toll or waive a statute of limitations; or

2. The service of suit or institution of arbitration proceedings against the Insured;

Provided, however, Claim shall not include Disciplinary Proceeding.

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Filed     18-CI-005229     09/07/2018     David L. Nicholson, Jefferson Circuit Clerk

**PROFESSIONAL INTERLINE**

C.  **Claim Expenses** means reasonable and necessary amounts incurred by the Company, or by the Insured with the prior written consent of the Company, in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include:

1.  Salary, wages, overhead, or benefit expenses of or associated with employees or officials of the Named Insured or employees or officials of the Company; or

2.  Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

D.  **Client** means a natural person or organization:

1.  For which services of a professional nature are rendered by the Insured; or

2.  Using the Named Insured's products or goods for which a fee was paid to the Named Insured.

E.  **Content** means advertising, publicity, press release, article, publication, marketing or promotional item or broadcast by any medium.

F.  **Damages** means the monetary portion of any judgment, award or settlement, including punitive or exemplary damages where insurable, provided, however, Damages shall not include:

1.  Multiplied portions of damages in excess of actual damages, including trebling of damages;

2.  The cost of any modifications or changes to the Insured's security measures, procedures, software or hardware required or agreed to by the Insured to satisfy a judgment, award or settlement;

3.  Any cost required to repair, build or modify property to comply with any award by a court, administrative order, arbitration award or any similar judgment;

4.  Taxes, criminal or civil fines assessed against an Insured, or attorneys' fees of a party other than an Insured or other penalties imposed by law;

5.  Sanctions;

6.  Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed;

7.  The return, withdrawal, reduction, restitution or payment of any fees, profits, charges or royalties for services or consideration and/or any expenses paid or payable to the Insured for services or goods;

8.  Any cost to correct, perform or re-perform services of a professional nature when the Insured had the capability to correct, perform or re-perform the services of a professional nature with respect to which such costs were incurred;

The insurability of such punitive damages shall be determined under the internal laws of any applicable jurisdiction most favorable to the Insured, including without limitation the jurisdiction in which the Named Insured, the Insured, the Company, this policy or such Claim is located.

G.  **Disciplinary Proceeding** means the Insured's receipt of notice of any proceeding by a United States of America domiciled regulatory body, disciplinary board or governmental agency, any of which has the authority to investigate charges of professional misconduct in the performance of Specified Professional Services; provided, however, Disciplinary Proceeding shall not include any criminal proceeding.

H.  **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

I.  **Electronic Communications System** means any wired, wireless, radio, electromagnetic, photo-optical or photo-electronic facility for the transmission of electronic communications; any electronic data processing systems, network or related electronic equipment for the storage of such communications; and any computer.

J.  **Electronic Data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or other media which are used with electronically controlled equipment.

K.  **Electronic Media Injury** means injury arising from any of the following offenses:

Filed     18-CI-005229     09/07/2018     David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

1. Libel, slander or defamation or any other form of disparagement;

2. Invasion or infringement of the right of privacy or the right of publicity;

3. Infringement of copyright, service mark, service name or trademark, title, trade dress, trade name or slogan and unfair competition alleged in connection therewith;

4. Plagiarism, piracy or misappropriation of ideas under implied contract; or

5. Infliction of emotional distress, mental anguish, false arrest or malicious prosecution;

Any of which arises from:

a. The content of the Named Insured's web site or intranet or the content of that portion of any social media platform, the content of which is under control of the Named Insured; or

b. Computer software or application written or published by the Named Insured.

L. **Financial Planner** means an investment professional who helps individuals or entities set and achieve their financial goals through investments, tax planning, asset allocation, risk management, retirement planning and estate planning, assisting in increasing net worth in furtherance of the individual's or entity's financial objectives.

M. **Mediation** means the voluntary process in which an objective third party who is a qualified professional mediator selected by the parties to the Claim, with written agreement of the Company, intervenes between the parties in an attempt to achieve settlement of the Claim. Mediation does not include litigation, arbitration or any court mandated proceedings.

N. **Personal Injury** means:

1. Libel, slander or defamation;

2. Invasion or infringement of the right of privacy or publicity;

3. Malicious prosecution or abuse of process; or

4. Humiliation or infliction of emotional distress;

Committed in the performance of Specified Professional Services.

O. **Policy Period** means the period from the inception date of this Coverage Part to the Coverage Part expiration date stated in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

P. **Pollutants** mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals, or waste. Waste includes medical waste and all other materials to be disposed of, recycled, stored, reconditioned, or reclaimed.

Q. **Private Data** means data containing an individual's:

1. Drivers license or other state-issued identification number; social security number; unpublished telephone number; savings account, checking account, credit card or debit card number each when in combination with the security code, access code, password or pin for such account or card number;

2. "Nonpublic personal information" as defined in the Gramm-Leach-Bliley Act of 1999, as amended, and regulations issued pursuant thereto;

3. "Protected healthcare information" as defined in the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended, and regulations issued pursuant thereto, and medical and healthcare information;

4. Private personal information as defined under a Security Breach Notice Law; and

5. Private personal information as defined under the law of a country other than the United States, which law is intended to provide for the protection of such private personal information;

Not including any lawfully available data accessible by the general public.

R. **Property Damage** means physical injury to tangible property, including all resulting loss of use of that property or loss of use of tangible property that is not physically injured; provided, however, tangible property shall not include Electronic Data.

S. **Specified Professional Services** means those services stated in Item 4. of the Declarations rendered for others for a fee.

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Package:000026 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000026 of 000085

Filed         18-CI-005229   09/07/2018      David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

**T.** **Unauthorized Access** means a breach of the Insured's security measures, systems or procedures, or stated privacy policy, or any intentional violation, interception, or use or misuse of the Named Insured's Electronic Communications System, whether or not for profit or gain, by any person, without the permission, knowledge or ratification of the Insured. Unauthorized Access also includes:

1. Access to the Named Insured's Electronic Communications System that is with the Insured's permission where such permission is the result of fraud or deception;

2. Use of the Named Insured's Electronic Communications System by a party authorized by the Insured to use such system, who does so for an unauthorized purpose;

3. The introduction of programs into the Named Insured's Electronic Communications System which contain fraudulent or destructive instructions or code including any inadvertent transmission of such programs to a third party; and

4. A credible threat or an extortion demand received by the Named Insured threatening or portending loss, injury or damage to:

   a. The Named Insured's Electronic Communications System, including programs, electronic data and media which form a part of the Named Insured's Electronic Communications System; or

   b. Money, securities, bonds or similar financial instruments, solely to the extent that record of such is maintained in digital or electronic format on the Named Insured's Electronic Communications System;

   For the purpose of extorting money or other valuable consideration from the Named Insured.

**U.** **Unintentional Data Compromise** means any computer security incident, intrusion, breach, compromise, theft, loss or misuse of the Named Insured's customer's(s') and/or employee's(s') Private Data of a Client.

**V.** **Wrongful Act** means a negligent act, error or omission in Specified Professional Services.

## THE EXCLUSIONS

With respect to all Coverages under this Coverage Part, this Coverage Part does not apply to any Claim or Supplementary Payment:

**A.** Based upon or arising out of the liability of others assumed by the Insured under any contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of the contract or agreement by reason of a Wrongful Act of the Insured in the performance of Specified Professional Services;

**B.** Based upon or arising out of a Wrongful Act, Personal Injury or an Electronic Media Injury committed by an organization, or a principal, partner, officer, director, trustee, member, manager or employee of an organization not stated in Item 1. of the Declarations;

**C.** Made against the Insured:

1. By any person or organization or its subrogee, assignee, contractor, subcontractor, or parent organization, subsidiary, division or affiliated organization which was or is operated, managed, owned or otherwise controlled, whether directly or indirectly, or in whole or in part, by:

   a. Any Insured or parent organization or any subsidiary, division or affiliated organization;

   b. Any principal, partner, officer, director, member, manager, employee or shareholder of the Named Insured;

2. By any principal, partner, officer, director, member, manager, employee or shareholder of an Insured or any subrogee or assignee of such person; or

3. By or on behalf of any person or organization included in the definition of Insured;

**D.** Based upon or arising out of:

1. Any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

2. The Insured's activities as a fiduciary under the Employee Retirement Income Security Act of 1974, as amended, or similar provisions of any federal, state or local statute or common law; or

Filed         18-CI-005229   09/07/2018      David L. Nicholson, Jefferson Circuit Clerk

Package:000027 of 000085        Presiding Judge: HON. ANN BAILEY SMITH (630450)        Package: **000027 of 000085**

Filed          18-CI-005229    09/07/2018     David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

3.   The employment relationship or the nature, terms or conditions of employment or any workplace tort brought by or on behalf of any employee, former employee, prospective employee, independent contractor or consultant of the Insured;

E.   Based upon or arising out of wrongful termination or other employment related practices;

F.   Based upon or arising out of:

1.   Infringement or inducement of infringement of patent or trade secret;

2.   Unfair competition based upon infringement of patent or trade secret; or

G.   Based upon or arising out of the insolvency, receivership, bankruptcy, liquidation or financial inability to pay, of any bank, savings and loan, banking firm, registered representative or broker/dealer of securities or commodities, insurance company, reinsurer, risk retention group or captive (or any other self-insurance plan or trust by whatsoever name);

H.   Based upon or arising out of any warranties or guarantees, express, implied or otherwise, or any cost estimates;

I.   Based upon, arising out of, or any way involving any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: antitrust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

J.   Based upon, arising out of, or in any way involving:

1.   Conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation; provided, however, this exclusion shall not apply to:

a.   The strictly vicarious liability of any Insured for the intentional, willful, dishonest or fraudulent conduct of another Insured or for the conduct of another Insured that constitutes a willful violation of any statute or regulation; or

b.   Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation; or

2.   The gaining by any Insured of any profit, remuneration or advantage to which such Insured was not legally entitled; provided, however, this exclusion shall not apply to Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be any profit, remuneration or advantage to which such Insured was not legally entitled; provided, that any fact pertaining to any Insured shall not be imputed to any other Insured under this Coverage Part for the purpose of determining the applicability of this exclusion;

K.   Based upon, arising out of, or in any way involving any Wrongful Act, Personal Injury or Electronic Media Injury or any fact, circumstance, situation or incident that has been the subject of any notice given prior to the Policy Period under any other policy of insurance or to any reinsurer, risk retention group or captive (or any other self-insurance plan or trust by whatsoever name) or insurance representative;

L.   Based upon, arising out of, or in any way involving any:

1.   Actual, alleged or threatened discharge, disposal, migration, dispersal, release or escape of Pollutants; or

2.   Direction, order or request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify, or neutralize Pollutants, or to pay for or contribute to the costs of undertaking such actions;

M.   Based upon, arising out of, or in any way involving any actual or alleged bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property including loss of use resulting therefrom;

N.   Based upon or arising out of any unlawful discrimination by any Insured;

O.   Based upon or arising out of any acts and/or services performed by any Insured which is not licensed or certified to perform such acts and/or services if such licensing or certification is required by law;

P.   Based upon or arising out of any conversion, misappropriation, commingling of or defalcation of funds or property;

Q.   Based upon or arising out of Unauthorized Access to the Named Insured's Electronic Communications System;

R.   Based upon or arising out of a violation or alleged violation of the Securities Act of 1933, Securities Exchange Act of 1934, Investment Company Act of 1940, any state blue sky or securities law or similar state or federal statute or any amendments thereto, or any regulation or order issued pursuant to any of the foregoing statutes or any securities regulatory board;

Filed          18-CI-005229    09/07/2018     David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

S.  Based upon or arising out of acts and/or services as an investment adviser, Financial Planner, registered representative or broker/dealer of securities or commodities, mortgage banker or investment banker;

T.  Based upon or arising out of any inability or failure of any party to pay or collect monies or to collect or pay federal, state, county or local tax, including, but not limited to, income tax, sales tax or property tax;

U.  With respect to Electronic Media Injury:

1.  Based upon, or arising out of or in any way involving the insolvency, receivership, bankruptcy, liquidation of the Named Insured or of any subsidiary thereof whether or not included in the definition of Insured;

2.  Based upon, arising out of, or in any way involving any actual or alleged Unintentional Data Compromise;

3.  Brought by, in the name of, or on behalf of any performance rights organization, including but not limited to ASCAP, BMI, SESAC, SOCAN or SoundExchange;

4.  Based upon or arising out of contractual liability involving the ownership of intellectual property by any vendor, Client, customer, sub-contractor, independent contractor or current or former employee;

5.  Based upon or arising out of usage of the Insured's name in operating its business, including but not limited to the Insured's legal name(s), domain name(s), fictitious name(s) or assumed name(s);

6.  Based upon or arising out of the introduction of programs into a third party's Electronic Communications System which contain fraudulent or destructive instructions or code;

7.  Based upon or arising out of failure of goods, products or services to conform with any statement of quality or performance;

8.  Based upon or arising out of any description relating to the price of goods, products or services; or

9.  Based upon or arising out of infringement of title, trade dress, slogan, service name or trademark, or other intellectual property arising from any tangible goods, service offerings or other products displayed on the Named Insured's web site; provided, however, this exclusion shall not apply to software copyright;

V.  Brought under any other Coverage Part of this policy.

## TERRITORY

The insurance afforded by this Coverage Part applies worldwide, provided the Claim is made in the United States of America, its territories or possessions, Puerto Rico or Canada.

## LIMITS OF LIABILITY

A.  **Limit of Liability – Professional Liability Coverage - Each Claim:**  The total liability of the Company under this Coverage Part for the combined total of Damages and Claim Expenses for each Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, shall not exceed the Limit of Liability stated in Item 5.A. of the Declarations as applicable to Each Claim.

B.  **Limit of Liability – Professional Liability Coverage - Aggregate:**  Subject to the above Limits of Liability A., the total liability of the Company under this Coverage Part for the combined total of all Damages and Claim Expenses arising out of all Claims first made against the Insured during the Policy Period and the Extended Reporting Period, if exercised shall not exceed the Coverage Part Aggregate Limit of Liability as stated in Item 5.A. of the Declarations.

C.  **Each Claim Deductible:**  With respect to this Coverage Part, the applicable Deductible amount stated in Item 5.A. of the Declarations shall be paid by the Named Insured and shall be applicable to each Claim and shall apply to Damages and Claim Expenses, whether or not any Damages payments are made. Such Deductible amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Deductible amount stated in Item 5.A of the Declarations. The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

D.  **Deductible Credits:**  With respect to Insuring Agreement A., if a Claim is settled without litigation, arbitration, Mediation or court mandated proceedings, the Deductible for such Claim will be reduced by seventy-five percent (75%) or ten thousand dollars ($10,000), whichever is less.

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

**PROFESSIONAL INTERLINE**

With respect to Insuring Agreement A., if the Named Insured and the Company agree to the use of Mediation and a Claim is settled at that Mediation, the Deductible for such Claim will be reduced by fifty percent (50%) or ten thousand dollars ($10,000), whichever is less.

The Deductible credits are not additive or cumulative.

E.   **Aggregate Deductible:** Subject to the above Limits of Liability C. and D., the total Deductible payments to be paid by the Named Insured shall not exceed the Aggregate Deductible stated in Item 5.A. of the Declarations for Damages and Claim Expenses arising out of all Claims, other than any Disciplinary Proceeding or offense, first made during the Policy Period and the Extended Reporting Period, if exercised.

F.   **Multiple Insureds, Claims and Claimants:** The inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 5.A. of the Declarations. More than one Claim arising out of a single Wrongful Act, Personal Injury or offense or a series of related Wrongful Acts, Personal Injuries or offenses shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Wrongful Act, Personal Injury or offense is made or with respect to written notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such written notice of potential Claim is first received by the Company.

# DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

A.   **Defense, Investigation and Settlement of Claims:** With respect to coverage hereunder, the Company shall have the right and duty to defend the Insured and to investigate any Claim and Disciplinary Proceeding to which coverage under this Coverage Part applies pursuant to the following provisions:

1.   Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5.A. and 7. of the Declarations. Such Claim Expenses shall reduce the applicable Limits of Liability and shall be applied against the applicable Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in Item 5.A. and 7. of the Declarations have been exhausted by payment(s) of Damages and/or Claim Expenses.

2.   The Company shall select defense counsel; provided, however, that if the law of the state of the Named Insured's domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

   a.   Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

   b.   Providing any other reasonable information requested;

   c.   Providing fully itemized billing on a periodic basis; and

   d.   Cooperating with the Company and the Insured in resolving any discrepancies;

   And the fees and costs incurred by such defense counsel, including those fees and costs generated by defense counsel's cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5.A. and 7. of the Declarations. Such Claim Expenses shall reduce the applicable Limits of Liability and shall be applied against the applicable Deductible.

B.   **Consent to Settlement:** The Company shall not settle any Claim without the prior written consent of the first Named Insured, but the Company shall have, at all times, the right to recommend a settlement of any Claim. If the first Named Insured shall refuse to settle such Claim pursuant to the Company's recommendations and acceptable to the claimant, then the Company's liability in regard to such Claim shall not exceed the sum of:

1.   The amount of Damages for which the Company could have settled such Claim;

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

**MEEO 5000 11 14**

Filed        18-CI-005229   09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

2.  Claim Expenses incurred as of the date such settlement was proposed in writing by the Company to the Named Insured; and

3.  Thirty percent (30%) of all covered Damages and Claim Expenses incurred thereafter on account of such Claim.

Such amounts are subject to the provisions of the Section Limits of Liability A. and B.

## CLAIMS

**A.   Claim Reporting Provision:**  It is a condition precedent to coverage afforded by this Coverage Part that the Insured shall give to the Company written notice as stated in Item 11. of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

In the event a suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

**B.   Discovery Clause:**  If during the Policy Period, the Insured first becomes aware of a specific Wrongful Act, Personal Injury or offense which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, then the Insured may provide written notice as stated in Item 11. of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Wrongful Act, Personal Injury or offense shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1.  The description of the specific Wrongful Act, Personal Injury or offense;

2.  The date on which such Wrongful Act, Personal Injury or offense took place;

3.  The damage or injury which has or may result from such Wrongful Act, Personal Injury or offense;

4.  The identity of any injured person and/or organization subject to such injury or damage; and

5.  The date and circumstances by which the Insured first became aware of such Wrongful Act, Personal Injury or offense.

Subject to the paragraph hereinabove, if during the Policy Period the Insured provides such written notice of a specific Wrongful Act, Personal Injury or offense which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, the Company at its sole option, may investigate such specific Wrongful Act, Personal Injury or offense. Such matter shall be subject to all terms, conditions and provisions in this Coverage Part as applicable to a Claim.

**C.   Supplementary Payments:**  Pursuant to Section Supplementary Payments B., the Company will indemnify the Named Insured for reasonable and necessary expenses incurred by an Insured at the Company's written request for attendance at any arbitration, mediation, deposition, hearing or trial in connection with a Claim to which this Coverage Part applies, and for loss of earnings of an Insured to attend at the Company's written request any arbitration, mediation, deposition, hearing or trial. Upon the Company's receipt of satisfactory written proof of payment by the Named Insured in no event later than sixty (60) days after the date incurred, the Company will indemnify the Named Insured for such expenses and such loss of earnings within sixty (60) days.

## EXTENDED REPORTING PERIOD

**A.**   The Named Insured's right to exercise the Extended Reporting Period under this Coverage Part shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Insuring Agreements of all Coverage Parts in the policy for which an Extended Reporting Period is available.

**B.**   If the Named Insured nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions Section D., Cancellation, or if the Company nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions Section D., Cancellation, for reasons other than nonpayment of premium, Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at the percentage stated in Item 9. of the Declarations of the annual premium for the Policy Period to extend the coverage granted under Section Insuring Agreement A. and Section

Filed        18-CI-005229   09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

**PROFESSIONAL INTERLINE**

Supplementary Payments A. and C. of this Coverage Part for the period of months stated in Item 9. of the Declarations, as elected by the Named Insured, to apply to:

1. Claims first made against the Insured during the period of months as elected, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for any Wrongful Act, Personal Injury or offense, the entirety of which happened on or after the applicable Retroactive Date stated in Item 5.A. of the Declarations and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this Coverage Part;

2. Disciplinary Proceedings first initiated against the Insured during the period of months as elected, and reported to the Company pursuant to Section Supplementary Payments A., Disciplinary Proceeding, following immediately upon the effective date of such cancellation or nonrenewal, for any Wrongful Act the entirety of which happened on or after the applicable Retroactive Date stated in Item 5.A. of the Declarations and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this Coverage Part.

This extended period of months as elected by the Named Insured and described herein shall be referred to in this Coverage Part as the Extended Reporting Period.

If, however, this Coverage Part is immediately succeeded by similar claims made insurance coverage on which the applicable Retroactive Date is the same as or earlier than that stated in Item 5.A. of the Declarations, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period applicable to the coverage afforded under this Coverage Part.

The quotation of a different premium and/or Deductible and/or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

C. As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid:

1. All Deductibles when due;

2. All premiums due for the Policy Period; and

3. All premium and deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement.

The right to purchase the Extended Reporting Period shall terminate unless a written request for the Extended Reporting Period as stated in Item 11. of the Declarations of such election for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with full payment of the additional premium for the Extended Reporting Period. If such written notice of request and payment of additional premium for the Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

D. In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

E. The Extended Reporting Period shall not in any way increase the Limits of Liability stated in Items 5., 6. and 7. of the Declarations.

## OTHER CONDITIONS

A. **Retractions and Corrections:** The Insured shall take such actions which, in the Insured's judgment, are deemed necessary and practicable to prevent or limit the dissemination of Content which is false, erroneous or untrue.

B. **Mitigation:** It is a condition precedent to coverage that the Insured shall not willfully fail to monitor and remove content which is posted on blogs, bulletins boards, chat rooms or other internet forums controlled by the Named Insured and which constitutes an Electronic Media Injury.

Package:000032 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package: 000032 of 000085

MEEO 5000 11 14                                                                                    Page 12 of 12

Filed        18-CI-005229     09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

**MARKEL**

# EVANSTON INSURANCE COMPANY

## DATABREACH<sup>SM</sup> INSURANCE COVERAGE PART
## FOR SPECIFIED PROFESSIONS

### TABLE OF CONTENTS

WITH REGARD TO COVERAGE B.1., THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

THE INSURED ..................................................................................................................................2

INSURING AGREEMENTS ..............................................................................................................3

SUPPLEMENTARY PAYMENTS ....................................................................................................3

DEFINITIONS ....................................................................................................................................5

THE EXCLUSIONS ............................................................................................................................8

TERRITORY .....................................................................................................................................10

LIMITS OF LIABILITY ...................................................................................................................10

DEFENSE, SETTLEMENTS AND CLAIM EXPENSES .............................................................11

CLAIMS, LOSS AND EXPENSES ..................................................................................................12

EXTENDED REPORTING PERIOD ..............................................................................................13

OTHER CONDITIONS ....................................................................................................................14

Package: 000033 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630250)

Package: 000033 of 000085

Filed        18-CI-005229     09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229    09/07/2018      David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

# Databreach<sup>SM</sup> Insurance Coverage Part
# For Specified Professions

WITH REGARD TO COVERAGE B.1., THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to the terms, conditions and limitations of this Coverage Part, the Company and the Insured agree as follows:

## THE INSURED

**A.**  The unqualified word "Insured," either in the singular or plural, means:

1.  The Named Insured herein defined as the person(s) or organization(s) stated in Item 1. of the Declarations;

2.  Solely with respect to Coverage B.1., any past or current principal, partner, officer, director, trustee or shareholder of the Named Insured stated in Item 1. of the Declarations solely while acting on behalf of the Named Insured and within the scope of their duties as such;

3.  Solely with respect to Coverage B.1., any past or current Employee of the Named Insured stated in Item 1. of the Declarations solely while acting on behalf of the Named Insured and within the scope of their duties as such;

4.  Solely with respect to Coverage B.1., if the Named Insured stated in Item 1. of the Declarations is a limited liability company, the limited liability company so stated, any past or current manager thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as manager of such limited liability company and any past or current member thereof, solely while acting on behalf of the Named Insured and within the scope of their duties as a member of such limited liability company;

5.  Solely with respect to Coverage B.1., the heirs, executors, administrators, assigns and legal representatives of each Insured in Items A.1.-4. above in the event of death, incapacity or bankruptcy of such Insured but only for such Insured's liability as is otherwise covered herein;

6.  Solely with respect to Coverage B.1., the lawful spouse or Domestic Partner of each Insured in Item A.2. above, but only for each such Insured's liability as is otherwise covered herein.

**B.**  Named Insured shall also include any organization, other than a partnership, joint venture or limited liability company, newly acquired or newly formed by the Named Insured stated in Item 1. of the Declarations, to perform the same services of a professional nature as the Named Insured stated in Item 1. of the Declarations and as are stated in the application attached to and made a part of this policy and over which the Named Insured stated in Item 1. of the Declarations maintains ownership or majority interest, provided there is no other similar insurance available to that organization. Coverage to such Named Insured shall be subject to the following:

1.  Coverage for such newly acquired or newly formed organization is afforded only until sixty (60) days after the Named Insured stated in Item 1. of the Declarations acquired or formed the organization or the end of the Policy Period, whichever is earlier; and

2.  Coverage for such newly acquired or newly formed organization is afforded only by reason of:

    a.  Unauthorized Access which happens or occurs;

    b.  Potential Unauthorized Access which is discovered; or

    c.  Unintentional Data Compromise which occurs;

    on or after the date on which the Named Insured stated in Item 1. of the Declarations newly acquired or newly formed such organization; and

3.  No person or organization is an Insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**C.**  If during the Policy Period a transaction occurs wherein another organization gains control of the Named Insured through the ownership of more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of directors or equivalent position, or the Named Insured merges into another organization or consolidates with another organization such that the Named Insured is not the surviving organization, then:

Filed          18-CI-005229    09/07/2018      David L. Nicholson, Jefferson Circuit Clerk

Package:000034 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000034 of 000085

Filed     18-CI-005229   09/07/2018     David L. Nicholson, Jefferson Circuit Clerk

**PROFESSIONAL INTERLINE**

1. The first Named Insured must give written notice of such transaction to the Company within sixty (60) days after the effective date of such transaction and provide the Company with such information in connection therewith as the Company may deem necessary; and

2. This Coverage Part shall apply only to:

   a. Unauthorized Access which happens or occurs; or

   b. Potential Unauthorized Access, which is discovered; or

   c. Unintentional Data Compromise which occurs;

   on or before the effective date of such transaction.

## INSURING AGREEMENTS

**A. Coverage B.1. – Data Breach and Privacy Liability Coverage – Claims Made Coverage:**

The Company shall pay on behalf of the Insured, in excess of the Deductible stated in Item 5.B. of the Declarations, all sums which the Insured shall become legally obligated to pay as Damages and Regulatory Fines both of which are a result of a Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims, Loss and Expenses A., Claim Reporting Provision by reason of an Unauthorized Access or a Potential Unauthorized Access, provided:

1. The entirety of the Unauthorized Access or the discovery of the Potential Unauthorized Access happens during the Policy Period or on or after the applicable Retroactive Date stated in Item 5.B. of the Declarations and before the end of the Policy Period; and

2. Prior to the effective date of this Coverage Part the Insured had no knowledge of such Unauthorized Access, Potential Unauthorized Access or any computer security incident, intrusion, breach, compromise, theft, loss or use of the Named Insured's Electronic Communications System which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

**B. Coverage B.2. – Data Breach Loss to Insured Coverage – Occurrence Coverage:**

The Company shall indemnify the Named Insured for the amount of Loss which is in excess of the Deductible stated in Item 5.B. of the Declarations and which results directly from an Unauthorized Access which occurs during the Policy Period and is reported to the Company pursuant to Section Claims, Loss and Expenses B., Loss Reporting Provision, provided:

1. Prior to the effective date of this Coverage Part the Insured had no knowledge such Unauthorized Access had occurred in whole or in part, and if any Insured knew prior to the Policy Period that the Unauthorized Access had occurred, then any continuation, change or resumption of such Unauthorized Access during or after the Policy Period will be deemed to have been known prior to the Policy Period;

2. Unauthorized Access, which occurs during the Policy Period and was not, prior to the Policy Period known to have occurred by any Insured, includes any continuation, change or resumption of that Unauthorized Access after the end of the Policy Period; and

3. Unauthorized Access will be deemed to have been known to have occurred at the earliest of any Insured:

   a. Reporting all, or any part, of the Unauthorized Access to the Company, any other insurer or any insurance representative;

   b. Incurring Loss or Breach Mitigation Expense because of the Unauthorized Access; or

   c. Becoming aware by any other means that Unauthorized Access has occurred or has begun to occur.

## SUPPLEMENTARY PAYMENTS

**A. Breach Mitigation Expense Coverage:** The Company shall, subject to the prior written consent of the Company, reimburse the Named Insured up to the Limit of Liability stated in Item 5.B. of the Declarations for Supplementary Payments A. Breach Mitigation Expense for the reasonable cost actually incurred by the Named Insured for Breach Mitigation Expense which results directly from an Unintentional Data Compromise which occurs during the Policy Period and is reported to the Company pursuant to Section Claims, Loss and Expenses C., provided:

1. The entirety of the Unintentional Data Compromise occurs during the Policy Period; and

Filed     18-CI-005229   09/07/2018     David L. Nicholson, Jefferson Circuit Clerk

Filed       18-CI-005229   09/07/2018       David L. Nicholson, Jefferson **PROFESSIONAL INTERLINE**

2.  Prior to the effective date of this Coverage Part the Insured had no knowledge such Unintentional Data Compromise of:

    **a.**  The Named Insured's Electronic Communications System, including any device which the Named Insured permits to be connected to its Electronic Communications System; or

    **b.**  The Electronic Communications System of a third party responsible for storing and securing the data of the Named Insured;

Had occurred in whole or in part, which may have led a reasonable person in the Insured's position to conclude that incurring such expenses was likely, and if any Insured knew prior to the Policy Period that such Unintentional Data Compromise had occurred, then any continuation, change or resumption of such Unintentional Data Compromise during or after the Policy Period will be deemed to have been known prior to the Policy Period; and

3.  Unintentional Data Compromise will be deemed to have been known to have occurred at the earliest of any Insured:

    **a.**  Reporting all, or any part, of an Unauthorized Access or Potential Unauthorized Access to the Company, any other insurer or any insurance representative;

    **b.**  Incurring Loss or Breach Mitigation Expense because of an Unauthorized Access or Potential Unauthorized Access; or

    **c.**  Becoming aware by any other means that an Unintentional Data Compromise has occurred or has begun to occur.

The Named Insured must submit to the Company satisfactory written proof of payment of such costs within one (1) year after the expiration or cancellation of this Coverage Part.

Any amount that the Company shall reimburse for costs actually incurred by the Named Insured pursuant to this section shall be in addition to the Aggregate Limit of Liability stated in Item 5.B. of the Declarations and shall not be subject to the Deductible. Notwithstanding the foregoing however, if similar expenses become part of a judgment, award or settlement, such expenses shall not be subject to coverage under this Supplementary Payments coverage.

**B.  Reward Coverage:**  The Company shall, subject to the prior written consent of the Company to the terms and offer of a reward, reimburse the Named Insured up to twenty five thousand dollars ($25,000) per Policy Period, including the Extended Reporting Period, if exercised, for the actual payment of a reward offered with regard to a Claim or Loss which is subject to coverage afforded under Coverage B.1. or B.2. of this Coverage Part.

The reward will be offered if:

1.  Recommended in writing by the Named Insured and any law enforcement official; and

2.  There is a reasonable likelihood that a reward will assist in the prosecution of the person or persons responsible for the Unauthorized Access or Potential Unauthorized Access.

An offer of reward will expire one (1) year after the earlier of:

    **a.**  The date such Claim under Coverage B.1. is first made or such Unauthorized Access under Coverage B.2. occurs; or

    **b.**  The expiration or cancellation of this Coverage Part.

Provided, however, that in the event there are claimants for a reward who have provided information prior to the expiration of the reward offer period above, the reward offer will remain outstanding for those claimants until their claim for payment has been finalized.

The reward will be paid for information directly leading to the arrest and conviction of a person or persons responsible for the Unauthorized Access or Potential Unauthorized Access, and upon the arrest and conviction of a person or persons responsible for the Unauthorized Access or Potential Unauthorized Access. In the event of multiple claimants for a reward, the reward monies will be shared among those providing information directly leading to assisting in the arrest and conviction of the person or persons responsible for the Unauthorized Access or Potential Unauthorized Access. The reward will not be offered to or paid to any: (i) principal, partner, officer, director, trustee, manager, member or shareholder of the Named Insured; (ii) Employee responsible for the Unauthorized Access or Potential Unauthorized Access; (iii) Employee responsible for managing the security of the Named Insured's Electronic Communications System; (iv) law enforcement official; or (v) person or organization providing any breach mitigation services for a fee.

Any amount that the Company incurs pursuant to this section shall be in addition to the Limits of Liability stated in Item 5. B.of the Declarations and shall not be subject to the Deductible.

Filed        18-CI-005229   09/07/2018      David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

C. **Loss of Earnings and Expense Reimbursement:** Upon submission to the Company of satisfactory written proof of payment by the Named Insured, the Company shall reimburse the Named Insured as expense reimbursement for all reasonable and necessary expenses incurred by an Insured at the Company's written request for attendance at any arbitration, mediation, deposition, hearing or trial in connection with a Claim to which this Coverage Part applies. The Named Insured shall give the Company written notice as stated in Item 11. of the Declarations written proof of payment of expenses as soon as practicable. In any event, such written proof of payment must be reported to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois 60015, on behalf of the Company, in no event later than sixty (60) days after incurring such expenses.

The Company shall compensate the Named Insured for loss of earnings of an Insured a maximum of five hundred dollars ($500) per day for all Insureds to attend at the Company's written request any arbitration, mediation, deposition, hearing or trial in connection with a Claim to which this Coverage Part applies.

The maximum the Company shall pay the Named Insured for all Insureds for compensation of all loss of earnings and expense reimbursement for all Claims to which this Coverage Part applies and all attendances at the Company's written request is fifteen thousand dollars ($15,000).

Payments to the Named Insured pursuant to this Section Supplementary Payments C. shall be in addition to the Limits of Liability stated in Item 5.B. of the Declarations and shall not be subject to the Deductible.

## DEFINITIONS

A. **Authority** means any agency of:

1. A federal, state or local government of the United States of America, its territories or possessions or Puerto Rico;

2. A federal, provincial or local government of Canada;

3. The government of the European Union (EU) or any member nation; or

4. The PCI Security Standards Council;

Any of which is charged with the administration or enforcement of laws or regulations relating to the use, transfer or storage of electronic communications or data storage systems.

B. **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these; provided, however, Bodily Injury does not include humiliation or the infliction of emotional distress arising solely from an Unauthorized Access or a Potential Unauthorized Access.

C. **Breach Mitigation Expense** means expenses incurred with the prior written consent of the Company for:

1. The services of a public relations professional, or other publicity expenses that are recommended by a public relations professional to respond to any actual adverse publicity in the media, that is the result of an Unauthorized Access or Potential Unauthorized Access;

2. Expenses, including but not limited to notification and related legal fees, that are incurred to comply with a Security Breach Notice Law and that are the result of an Unauthorized Access or Potential Unauthorized Access; and

3. Expenses associated with voluntarily providing credit monitoring services to individuals effected by an Unauthorized Access or Potential Unauthorized Access.

D. **Claim** means:

1. With regard to Coverage B.1. the Insured's receipt of:

   a. A written demand for damages, including a written demand that the Insured toll or waive a statute of limitations;

   b. The service of suit or institution of arbitration proceedings against the Insured; or

   c. A written notice of the institution of a charge against the Insured by any Authority or any administrative proceeding initiated by an Authority including any investigation, conciliation meeting or hearing;

   All as a result of an Unauthorized Access or Potential Unauthorized Access.

E. **Claim Expenses** means reasonable and necessary amounts incurred by the Company, or by the Insured with the prior written consent of the Company, in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but

Package: 000037 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package: 000037 of 000085

Filed          18-CI-005229   09/07/2018      David L. Nicholson, Jefferson Circuit Clerk

**PROFESSIONAL INTERLINE**

without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include:

1. Salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or

2. Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

F. **Damages** means the monetary portion of any judgment, award or settlement, including punitive or exemplary damages where insurable; provided, however, Damages shall not include:

1. Multiplied portions of damages in excess of actual damages, including trebling of damages;

2. The cost of any modifications or changes to the Insured's security measures, procedures, software or hardware required or agreed to by the Insured to satisfy a judgment, award or settlement;

3. Any cost required to repair, build or modify property to comply with any award by a court, administrative order, arbitration award or any similar judgment;

4. Taxes, criminal or civil fines assessed against an Insured, or attorneys' fees of a party other than an Insured, other penalties imposed by law or Regulatory Fines;

5. Sanctions;

6. Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed; or

7. The return, withdrawal, reduction, restitution or payment of any fees, profits charges or royalties for services or consideration and/or any expenses paid or payable to the Insured for services or goods.

The insurability of such punitive damages shall be determined under the internal laws of any applicable jurisdiction most favorable to the Insured, including without limitation the jurisdiction in which the Named Insured, the Insured, the Company, this policy or such Claim is located.

G. **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

H. **Electronic Communications System** means any wired, wireless, radio, electromagnetic, photo-optical or photo-electronic facility for the transmission of electronic communications; any electronic data processing system, network or related electronic equipment for the storage of such communications; and any computer.

I. **Employee** means any natural person (except a director or trustee of the Named Insured, if the Named Insured is a corporation or trust, who is not also an officer or employee thereof) while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. Employee includes any Leased Worker and any Temporary Worker but does not include any independent contractor or consultant of the Named Insured or any Employee of the Named Insured provided as a staffing service employee or a Leased Worker to work at the worksite of a client of the Named Insured.

J. **Extra Expense** means necessary expenses that the Named Insured would not have incurred if there had not been a Loss resulting from an Unauthorized Access.

K. **Forensic Expense** means reasonable and necessary costs incurred by the Named Insured to engage the services of a third party computer security expert to determine the existence and cause of any Unauthorized Access.

L. **Interrelated Unauthorized Accesses** means Unauthorized Access(es) and/or Potential Unauthorized Access(es) which are logically or causally connected by reason of any common fact, incident, circumstance, situation, or any computer security incident, intrusion, breach, compromise, theft, loss or use of the Named Insured's Electronic Communications System.

M. **Leased Worker** means a person leased to the Named Insured by a labor leasing organization, under an agreement between the Named Insured and the labor leasing organization, to perform duties related to the conduct of the Named Insured's business and which are at the Insured's direction.

N. **Loss** means:

1. Forensic Expense and reasonable and necessary costs incurred by the Named Insured to restore with due diligence and dispatch the Named Insured's Electronic Communications System to the condition that existed prior to an

Filed          18-CI-005229   09/07/2018      David L. Nicholson, Jefferson Circuit Clerk

Filed       18-CI-005229   09/07/2018       David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

Unauthorized Access, including reconstruction of programs, electronic data and media which form a part of the Named Insured's Electronic Communications System;

2. Extra Expense incurred by the Named Insured in continuing the conduct of the Named Insured's business during the period from the time of the discovery of an Unauthorized Access to the time the Named Insured's Electronic Communications System is or can be restored with due diligence and dispatch to the condition that existed prior to an Unauthorized Access;

3. Subject to prior approval by the Company, expenses necessarily incurred by the Named Insured to reduce Loss under Coverage B.2., after an Unauthorized Access has happened and to the extent that such expenses do not exceed the value of the Loss which such expenses are incurred to reduce;

4. Loss of money, securities, bonds or similar financial instruments with monetary value which is incurred by the Named Insured and which is proximately caused by the Unauthorized Access of a person or groups of persons excluding any Insured or Employee of any Insured, with the intent to commit fraud, theft, or other dishonest act; or

5. Subject to prior written approval by the Company, the Named Insured's payment of an extortion demand;

Provided, however, Loss shall not include:

a. Any cost or charges associated with building, modifying or upgrading the Named Insured's Electronic Communications System, or any software, security measures or procedures;

b. Any cost required to repair, build or modify tangible property to comply with any award or order by a court, an Authority, arbitration or any similar proceeding;

c. Any loss of reputation of the Named Insured or loss of customer confidence in the Named Insured or the value imputed to such loss;

d. Expenses incurred by the Insured in establishing the amount of any Loss covered under this Coverage Part; or

e. Loss of business income.

O. **Policy Period** means the period from the inception date of this Coverage Part to the Coverage Part expiration date stated in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

P. **Pollutants** mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or waste. Waste includes medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

Q. **Potential Unauthorized Access** means the threat or potential threat of an Unauthorized Access arising from a theft or loss of any component of the Named Insured's Electronic Communications System.

R. **Private Data** means data containing an individual's:

1. Drivers license or other state-issued identification number; social security number; unpublished telephone number; savings account, checking account, credit card or debit card number each when in combination with the security code, access code, password or pin for such account or card number;

2. "Nonpublic personal information" as defined in the Gramm-Leach-Bliley Act of 1999, as amended, and regulations issued pursuant thereto;

3. "Protected healthcare information" as defined in the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended, and regulations issued pursuant thereto, and medical and healthcare information;

4. Private personal information as defined under a Security Breach Notice Law; and

5. Private personal information as defined under the law of a country other than the United States, which law is intended to provide for the protection of such private personal information;

Not including any lawfully available data accessible by the general public.

S. **Property Damage** means physical injury to tangible property, including all resulting loss of use of that property or loss of use of tangible property that is not physically injured; provided, however, damage to, corruption of or inability to access data, software and computer networks shall not be considered to be loss of use of tangible property.

T. **Regulatory Fines** means civil fines and penalties assessed against the Insured by an Authority as a result of a Claim subject to coverage under Coverage B.1. of this Coverage Part; provided however, the Company's total obligation under

Filed       18-CI-005229   09/07/2018       David L. Nicholson, Jefferson Circuit Clerk

Filed        18-CI-005229   09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

this Coverage Part for all Regulatory Fines shall not exceed twenty five thousand dollars ($25,000) which amount is a part of and not in addition to the Limits of Liability.

U. **Security Breach Notice Law** means any law, statute or regulation within the United States of America, its territories or possessions, Puerto Rico or Canada requiring the Named Insured to notify individuals of the compromise or possible compromise of the security of their confidential information in the Named Insured's care, custody or control and the European Union (EU) Data Protection Act of 1995.

V. **Temporary Worker** means any person who is furnished to the Named Insured to substitute for a permanent Employee on leave or to meet seasonal or short-term work load requirements.

W. **Unauthorized Access** means a breach of the Named Insured's security measures, systems, procedures, or stated privacy policy, or any intentional violation, interception, or use or misuse of the Named Insured's Electronic Communications System, whether or not for profit or gain, by any person, without the permission, knowledge or ratification of the Insured. Unauthorized Access also includes:

1. Access to the Named Insured's Electronic Communications System that is with the Insured's permission where such permission is the result of fraud or deception;

2. Use of the Named Insured's Electronic Communications System by a party authorized by the Insured to use such system, who does so for an unauthorized purpose;

3. The introduction of programs into the Named Insured's Electronic Communications System which contain fraudulent or destructive instructions or code including any inadvertent transmission of such programs to a third party;

4. A credible threat or an extortion demand received by the Named Insured threatening or portending loss, injury or damage to:

   a. The Named Insured's Electronic Communications System, including programs, electronic data and media which form a part of the Named Insured's Electronic Communications System; or

   b. Money, securities, bonds or similar financial instruments, solely to the extent that record of such is maintained in digital or electronic format on the Named Insured's Electronic Communications System;

   For the purpose of extorting money or other valuable consideration from the Named Insured; and

5. Failure to prevent a denial of service attack on the Named Insured's Electronic Communications System or to prevent the use of the Named Insured's Electronic Communications System by an unauthorized user or code to launch a denial of service attack on a third party;

6. Solely with regard to:

   a. Coverage B.1., Data Breach and Privacy Liability Coverage; and

   b. Supplementary Payments A., Breach Mitigation Expense Coverage;

   The theft or loss of any paper records; and

7. Solely with regard to Supplementary Payments A., Breach Mitigation Expense Coverage:

   The failure of any third party to prevent the unauthorized viewing, copying or distribution of Private Data which the Named Insured has entrusted to such party under a written contract or agreement that specifically requires such party to protect the confidentiality of the Private Data so entrusted.

X. **Unintentional Data Compromise** means any computer security incident, intrusion, breach, compromise, theft, loss or misuse of the Named Insured's customer's(s') and/or employee's(s') Private Data.

## THE EXCLUSIONS

A. With respect to all Coverages, this Coverage Part does not apply to any Claim, Loss or Supplementary Payments:

1. Caused by access to the Named Insured's Electronic Communications System by any government, governmental agency or subagency, or any agents thereof while acting on behalf of such entity;

2. Due to riot, civil commotion, war, insurrection or usurped power;

3. For Bodily Injury or Property Damage;

Filed        18-CI-005229   09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229     09/07/2018     David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

4.  Based upon or arising out of liability of others assumed by the Insured under any contract or agreement: provided, however, this exclusion shall not apply to liability an Insured would have in the absence of such contract or agreement;

5.  Based upon, arising out of, or in any way involving any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: antitrust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

6.  Based upon, arising out of, or in any way involving:

    a.  Conduct of the Insured or at the Insured's direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation; provided, however, this exclusion shall not apply to:

        (1).  The strictly vicarious liability of any Insured for the intentional, willful, dishonest or fraudulent conduct of another Insured or for the conduct of another Insured that constitutes a willful violation of any statute or regulation; or

        (2).  Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation; or

    b.  The gaining by any Insured of any profit, remuneration or advantage to which such Insured was not legally entitled; provided, however, this exclusion shall not apply to Claim Expenses incurred until an allegation is adjudicated through a finding by a trier-of-fact to be any profit, remuneration or advantage to which such Insured was not legally entitled; provided, that any fact pertaining to any Insured shall not be imputed to any other Insured under this Coverage Part for the purpose of determining the applicability of this exclusion;

7.  Based upon, arising out of, or in any way involving any:

    a.  Actual, alleged or threatened discharge, disposal, migration, dispersal, release or escape of Pollutants; or

    b.  Direction, order or request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or to pay for or contribute to the costs of undertaking such actions;

8.  Brought by or on behalf of any Employee, former Employee, prospective Employee, independent contractor or consultant of the Insured based upon, arising out of, or in any way involving the employment relationship or the nature, terms or conditions of employment or any workplace tort;

9.  Brought by, in the name of, or on behalf of any Insured; provided, however, this exclusion shall not apply to any Claim arising out of Unauthorized Access or Potential Unauthorized Access to the personal information of an Employee which is in the care, custody or control of the Named Insured;

10. Based upon, arising out of, or in any way involving the insolvency, receivership, bankruptcy, liquidation of the Named Insured or of any subsidiary thereof whether or not included in the definition of Insured;

11. Based upon or arising out of any warranties or guarantees, express, implied or otherwise, or any cost estimates;

12. Based upon or arising out of any conversion, misappropriation, commingling of or defalcation of funds or property;

13. Based upon or arising out of any inability or failure of any party to pay or collect monies or to collect or pay federal, state, county or local tax, including, but not limited to, income tax, sales tax or property tax;

14. Based upon or arising out of infringement or inducement of infringement of patent or trade secret;

15. Based upon, arising out of, or in any way involving an act, error or omission in the performance of services of a professional nature rendered or that should have been rendered by the Insured or by any person or organization for whose acts, errors or omissions the Insured is legally responsible;

16. Based upon or arising out of any violation of:

    a.  The Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

    b.  The CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation;

    c.  The Fair Credit Reporting Act (FCRA) and amendments thereto or any similar or related federal or state statute, law, rule, ordinance or regulation, including the Fair and Accurate Credit Transactions Act (FACTA); or

Package:000041 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630250)

Package : 000041 of 000085

Filed          18-CI-005229     09/07/2018     David L. Nicholson, Jefferson Circuit Clerk

Filed        18-CI-005229   09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

  d. Any other federal, state or local statute, law, rule, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments  thereto or any similar or related federal or state statute, law, rule, ordinance or regulation that address, prohibits or limits the printing, dissemination, disposal, collection, recording, sending, transmitting, communication or distribution of material or information; or

**17.** Brought under any other Coverage Part of this policy.

**B.** With respect to Coverage B.1., this Coverage Part does not apply to any Claim:

  **1.** Made by any person or organization which is operated, managed or owned, in whole or in part, by the Named Insured or any parent organization, subsidiary, division or affiliated organization thereof.

**C.** With respect to Coverage B.2., this Coverage Part does not apply to any Loss:

  **1.** Caused by theft, physical damage or destruction of the Named Insured's Electronic Communications System or any part thereof; provided, however, this exclusion shall not apply to destruction of programs, electronic data and media caused by an Unauthorized Access;

  **2.** Based upon or arising out of theft, or alleged theft, of money, securities, bonds, or similar financial instruments with monetary value caused or contributed to by any fraudulent, dishonest or criminal act committed by any person who is an Employee or an Insured at the time of the Unauthorized Access, whether acting alone or in collusion with others; or

  **3.** Of the value of trade secrets, confidential processing methods or other confidential or proprietary information.

## TERRITORY

The insurance afforded by this Coverage Part applies worldwide, provided the Claim is made in the United States of America, its territories or possessions, Puerto Rico or Canada.

## LIMITS OF LIABILITY

**A. Limit of Liability - Data Breach and Privacy Liability Coverage - Each Claim:**  The liability of the Company under Coverage B.1. for the combined total of Damages, Regulatory Fines and Claim Expenses for any Claim first made against the Insured during the Policy Period or Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims, Loss and Expenses A., Claim Reporting Provision, for each Claim shall not exceed the Each Claim Limit of Liability stated in Item 5.B. and 7. of the Declarations for Coverage B.1.

**B. Limit of Liability - Data Breach Loss to Insured Coverage - Each Unauthorized Access:**  The liability of the Company under Coverage B.2. for all Loss resulting directly from each Unauthorized Access which occurs during the Policy Period and is reported to the Company pursuant to Section Claims, Loss and Expenses B., Loss Reporting Provision, shall not exceed the Each Unauthorized Access Limit of Liability stated in Item 5.B. and 7. of the Declarations for Coverage B.2.

**C. Limit of Liability - Data Breach and Privacy Liability Coverage and Data Breach Loss to Insured Coverage – Coverage Part Aggregate:**  Subject to the above Limits of Liability A. and B., the total liability of the Company shall not exceed the Coverage Part aggregate Limit of Liability as stated in Item 5.B. and 7. of the Declarations:

  **1.** For all Damages, Regulatory Fines, as applicable, and Claim Expenses arising out of all Claims first made against the Insured during the Policy Period and the Extended Reporting Period, if exercised, under Coverage B.1.; and

  **2.** For all Loss incurred by the Named Insured which results directly from Unauthorized Access which occurs during the Policy Period under Coverage B.2.

**D. Limit of Liability - Supplementary Payments A. Breach Mitigation Expense – All Unintentional Data Compromises:**  The liability of the Company under Supplementary Payments A. for all Breach Mitigation Expense resulting directly from any and all Unintentional Data Compromises which occur during the Policy Period and are reported to the Company pursuant to Section Claims, Loss and Expenses B., Loss Reporting Provision, shall not exceed the Supplementary Payments A. Breach Mitigation Expense Limit of Liability stated in Item 5.B. of the Declarations.

**E. Deductible:**

  **1.** With regard to Coverage B.1., the applicable Deductible amount stated in Item 5.B. of the Declarations shall be paid by the Named Insured and shall be applicable to each Claim under Coverage B.1. and shall apply to Damages, Regulatory Fines and Claim Expenses, whether or not any Damages or Regulatory Fines payments are made. Such Deductible amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days.

Filed        18-CI-005229   09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229     09/07/2018       David L. Nicholson, Jefferson Circuit Clerk
PROFESSIONAL INTERLINE

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

2. With regard to Coverage B.2., the applicable Deductible amount stated in Item 5.B. of the Declarations shall be applicable to Loss from each Unauthorized Access under Coverage B.2. Such Deductible amount will be deducted from the amount of Loss for which the Company shall indemnify the Named Insured.

3. In the event that the same Unauthorized Access results in a Claim that is covered under Coverage B.1. and a Loss that is covered under Coverage B.2., only one Deductible shall apply which Deductible shall be the higher of the applicable Deductibles.

F.  **Multiple Insureds, Claims, Losses and Claimants:** The inclusion herein of more than one Insured in any Claim or the making of Claims by, or reporting of Loss incurred by, more than one person or organization shall not operate to increase the Limits of Liability stated in Item 5.B. and 7. of the Declarations and the Coverage Part.

1. With regard to Coverage B.1., more than one Claim arising out of a single Unauthorized Access or Interrelated Unauthorized Accesses shall be treated as a single Claim. Such single Claim shall be deemed first made on the date on which the earliest Claim arising out of such Unauthorized Access or Interrelated Unauthorized Accesses is made or with regard to written notice given to and accepted by the Company pursuant to Section Claims, Loss and Expenses D., Discovery Clause, on the date within the Policy Period on which such written notice of potential Claim is first received by the Company.

2. With regard to Coverage B.2., more than one Loss arising out of a single Unauthorized Access shall be considered a single Unauthorized Access.

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

A.  **Defense and Investigation:** With regard to Coverage B.1. the Company shall have the right and duty to defend the Insured and to investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

1. Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5.B. and 7. of the Declarations. Such Claim Expenses shall reduce the applicable Limits of Liability and shall be applied against the applicable Deductible. The Company shall have no obligation to pay any Damages or Regulatory Fines or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in Item 5.B. and 7. of the Declarations have been exhausted by payment(s) of Damages, Regulatory Fines and/or Claim Expenses.

2. The Company shall select defense counsel; provided, however, that if the law of the state of the Named Insured's domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

    a.  Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages and Regulatory Fines, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

    b.  Providing any other reasonable information requested;

    c.  Fully itemized billing on a periodic basis; and

    d.  Cooperating with the Company and the Insured in resolving any discrepancies;

    And the fees and costs incurred by such defense counsel, including those fees and costs generated by defense counsel's cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5.B. and 7. of the Declarations. Such Claim Expenses shall reduce the applicable Limits of Liability and shall be applied against the applicable Deductible.

B.  **Claim Settlement:** The Company may, at its sole discretion, investigate, negotiate and settle any Claim. The Named Insured will abide by the terms of such settlement and, upon the request of the Company, will immediately contribute the amount of any Deductible to conclude the settlement.

Filed          18-CI-005229     09/07/2018       David L. Nicholson, Jefferson Circuit Clerk

Package: 000043 of 091085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000000 of 000085

Filed     18-CI-005229   09/07/2018     David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

C. **Investigation, Loss or Breach Mitigation Expense Payment:**  The Company may, at its sole discretion, investigate any Loss, any Breach Mitigation Expense, any Unintentional Data Compromise and any Unauthorized Access or Potential Unauthorized Access. The Company will pay for covered Loss and Breach Mitigation Expense incurred by the Named Insured in excess of the Deductible, if applicable. The Company will indemnify the Named Insured within sixty (60) days after it receives the sworn Proof of Loss under Coverage B.2. or satisfactory written proof of payment of Breach Mitigation Expenses, provided:

1. The Insured has complied with all the terms of this Coverage Part; and

2. The Company and the Named Insured have agreed with the items included within and the amounts documented in the Named Insured's sworn Proof of Loss and satisfactory written proof of payment of Breach Mitigation Expenses.

## CLAIMS, LOSS AND EXPENSES

A. **Claim Reporting Provision:**  It is a condition precedent to coverage afforded by this Coverage Part under Coverage B.1. that the Insured shall give to the Company written notice as stated in Item 11. of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

In the event a suit is brought against the Insured or a charge against the Insured is instituted by any Authority or any administrative action is initiated by any Authority, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

B. **Loss Reporting Provision:**  It is a condition precedent to coverage afforded by this Coverage Part under Coverage B.2. that the Named Insured shall give to the Company written notice as stated in Item 11. of the Declarations as soon as practicable and in no event later than sixty (60) days after the end of the Policy Period of any Loss which results directly from an Unauthorized Access which occurs during the Policy Period.

In the event of any Loss, the Insured must:

1. Notify law enforcement in the event of a theft;

2. Give the Company prompt written notice of the Unauthorized Access;

3. As soon as practicable, provide a description of how, when and what elements of the Named Insured's Electronic Communications System were impacted by the Unauthorized Access;

4. Take all reasonable steps to protect the Named Insured's Electronic Communications System from further Unauthorized Access and to reduce Loss;

5. As often as may be reasonably required, permit the Company to inspect the Named Insured's Electronic Communications System and examine the Insured's books and records related to the Loss incurred; and

6. Provide, in no event later than sixty (60) days after the Company's request, a sworn proof of Loss, signed by the Named Insured, containing the information the Company requests to investigate the Loss.

C. **Breach Mitigation Expense Reporting Provision:**  It is a condition precedent to coverage afforded by this Coverage Part under Section Supplementary Payments A., Breach Mitigation Expense Coverage, that the Named Insured shall give to the Company written notice as stated in Item 11. of the Declarations as soon as practicable and in no event later than sixty (60) days after the end of the Policy Period of any Unintentional Data Compromise, Unauthorized Access or Potential Unauthorized Access which occurs during the Policy Period.

The Named Insured must:

1. Submit to the Company satisfactory written proof of payment of such Breach Mitigation Expenses within one (1) year after the expiration or cancellation of this Coverage Part;

2. As soon as practicable, provide a description of how, when and what elements, if any, of the Named Insured's or a third party's Electronic Communications System were impacted by the Unintentional Data Compromise, Unauthorized Access or Potential Unauthorized Access;

3. Take all reasonable steps to protect the Named Insured's Electronic Communications System from further Unauthorized Access, if applicable;

4. As often as may be reasonably required, permit the Company to inspect the Named Insured's Electronic Communications System and examine the Insured's books and records related to the Breach Mitigation Expense incurred.

Filed     18-CI-005229   09/07/2018     David L. Nicholson, Jefferson Circuit Clerk

Filed   18-CI-005229   09/07/2018   David L. Nicholson, Jefferson Circuit Clerk

PROFESSIONAL INTERLINE

D. **Discovery Clause:** Under Coverage B.1., if during the Policy Period, the Insured first becomes aware of a specific Unauthorized Access or specific Potential Unauthorized Access which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part then the Insured may provide written notice as stated in Item 11. of the Declarations to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Unauthorized Access or Potential Unauthorized Access shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is first received by the Company.

It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

1. The description of the specific Unauthorized Access or Potential Unauthorized Access;

2. The date on which such Unauthorized Access or Potential Unauthorized Access took place;

3. The injury or damage which has or may result from such Unauthorized Access or Potential Unauthorized Access;

4. The identity of any injured persons and/or organization subject to such injury or damage; and

5. The date and circumstances by which the Insured first became aware of such Unauthorized Access or Potential Unauthorized Access.

Subject to the paragraph hereinabove, if during the Policy Period the Insured provides such written notice of a specific Unauthorized Access or Potential Unauthorized Access which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, the Company at its sole option, may investigate such specific Unauthorized Access or Potential Unauthorized Access. Such matter shall be subject to all terms, conditions and provisions in this Coverage Part as applicable to a Claim.

E. **Supplementary Payments:** Pursuant to Section Supplementary Payments C., the Company will indemnify the Named Insured for reasonable and necessary expenses incurred by an Insured at the Company's written request for attendance at any arbitration, mediation, deposition, hearing or trial in connection with a Claim to which this Coverage Part applies, and for loss of earnings of an Insured to attend at the Company's written request any arbitration, mediation, deposition, hearing or trial. Upon the Company's receipt of satisfactory written proof of payment by the Named Insured in no event later than sixty (60) days after the date incurred, the Company will indemnify the Named Insured for such expenses and such loss of earnings within sixty (60) days.

# EXTENDED REPORTING PERIOD

A. The Named Insured's right to exercise the Extended Reporting Period under this Coverage Part shall exist solely if the Named Insured also exercises its right to purchase the Extended Reporting Period under all Insuring Agreements of all Coverage Parts in the policy for which an Extended Reporting Period is available.

B. With regard to Coverage B.1., if the Named Insured nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions D., Cancellation, or if the Company nonrenews this policy in its entirety or cancels this policy in its entirety pursuant to Common Policy Conditions D., Cancellation, for reasons other than nonpayment of premium, Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at the percentage stated in Item 9. of the Declarations of the annual premium for the Policy Period to extend the coverage granted under Coverage B.1. of this Coverage Part for the period of months stated in Item 9. of the Declarations, as elected by the Named Insured, to apply to Claims first made against the Insured during the period of months as elected, and reported to the Company pursuant to Section Claims, Loss and Expenses A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, by reason of any Unauthorized Access or Potential Unauthorized Access the entirety of which happened during the Policy Period or on or after the Retroactive Date stated in Item 5.B. of the Declarations and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this Coverage Part.

This extended period of coverage as elected by the Named Insured and described in this paragraph shall be referred to in this Coverage Part as the Extended Reporting Period.

If, however, this Coverage Part is immediately succeeded by similar claims made insurance coverage on which the applicable Retroactive Date is the same as or earlier than that stated in Item 5.B. of the Declarations, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period applicable to the coverage afforded under this Coverage Part.

Filed   18-CI-005229   09/07/2018   David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229   09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

**PROFESSIONAL INTERLINE**

The quotation of a different premium and/or Deductible and/or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

C.  As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid:

   1.  All Deductibles when due;

   2.  All premiums due for the Policy Period; and

   3.  All premiums and deductibles due on any other policies issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement.

The right to purchase the Extended Reporting Period shall terminate unless a written request for the Extended Reporting Period as stated in Item 11. of the Declarations of such election for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with full payment of the additional premium for the Extended Reporting Period. If such written notice of request and payment of additional premium for the Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

D.  In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

E.  The Extended Reporting Period shall not in any way increase the Limits of Liability stated in Items 5., 6. and 7. of the Declarations.

## OTHER CONDITIONS

A.  **Mitigation:** It is a condition precedent to coverage that the Insured shall not willfully fail to comply with any Security Breach Notice Law that the Named Insured may be subject to, by reason of an Unauthorized Access or Potential Unauthorized Access.

Filed          18-CI-005229   09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

MEEO 5001 11 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number A

| POLICY NUMBER<br>EO866785 | POLICY CHANGES<br>EFFECTIVE<br>3/31/2017 | COMPANY<br>Evanston Insurance Company |
|---|---|---|
| NAMED INSURED<br>I HEALTH SOLUTIONS, LLC | | AUTHORIZED REPRESENTATIVE<br>Cincinnati Intermediaries, Inc.<br>3975 Erie Avenue<br>Cincinnati, OH 45208 |

COVERAGE PARTS AFFECTED

Professional Liability Insurance Coverage Part

Databreach Insurance Coverage Part

CHANGES

**ADDITIONAL NAMED INSURED**

It is understood and agreed that the Named Insured shown in Item #1 of the Declarations is amended to include the following:

Paradigm Management
DNA Healthcare, Inc.
I Health West

All other terms and conditions remain unchanged.

_____
AUTHORIZED REPRESENTATIVE

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

INTERLINE

**MARKEL**

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MINIMUM EARNED PREMIUM ENDORSEMENT

In the event that this policy is cancelled by the Named Insured who is authorized to act on behalf of all insureds, the policy premium is subject to a minimum earned premium of 25%.

Package: 000048 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : **000048 of 000085**

All other terms and conditions remain unchanged

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

MEIL 5200-25% 07 04                                                        Page 1 of 1

Filed        18-CI-005229    09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

**MARKEL**

# EVANSTON INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CERTIFIED ACTS OF TERRORISM ENDORSEMENT

This endorsement modifies insurance provided under the following:

DATA BREACH AND PRIVACY LIABILITY, DATA BREACH LOSS TO INSURED AND ELECTRONIC MEDIA LIABILITY
    INSURANCE POLICY
DATABREACH[SM] INSURANCE COVERAGE PART FOR INFORMATION TECHNOLOGY PROFESSIONALS
DATABREACH[SM] INSURANCE COVERAGE PART FOR SPECIFIED PROFESSIONS
GENERAL LIABILITY INSURANCE (CLAIMS MADE) COVERAGE PART FOR INFORMATION TECHNOLOGY
    PROFESSIONALS
GENERAL LIABILITY INSURANCE (CLAIMS MADE) COVERAGE PART FOR SPECIFIED PROFESSIONS

In consideration of the premium paid, it is hereby understood and agreed that, with respect to any claim, loss or supplementary payments otherwise covered hereunder, this policy shall not exclude any claim, loss or supplementary payments based upon, arising out of, or in any way involving any Certified Act of Terrorism.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The federal Terrorism Risk Insurance of Act sets forth the following criteria for a Certified Act of Terrorism:

1.  The act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Calendar Year and the Company has met the Company's deductible under the Terrorism Risk Insurance Act, the Company shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such cases insured losses up to that amount are subject to pro rata allocation in accordance with the procedures established by the Secretary of Treasury.

Package:000049 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package: 000049 of 000085

All other terms and conditions remain unchanged.

Filed        18-CI-005229    09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

INTERLINE

**MARKEL**

# PRIVACY NOTICE

We are committed to safeguarding your privacy. We understand your concerns regarding the privacy of your nonpublic personal information. No nonpublic personal information is required to be collected when you visit our websites; however, this information may be requested in order to provide the products and services described. We do not sell nonpublic personal information to non-affiliated third parties for marketing or other purposes. We only use and share this type of information with non-affiliated third parties for the purposes of underwriting insurance, administering your policy or claim and other purposes as permitted by law, such as disclosures to insurance regulatory authorities or in response to legal process. Notwithstanding the foregoing, we may use this information for the purpose of marketing our own products and services to you.

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms;

- Information about your transactions with us, our affiliates, or others; and/or

- Information we receive from consumer reporting agencies and inspection reports.

We do not disclose any nonpublic personal information about our customers/claimants or former customers/claimants to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Service providers, such as insurance agents and/ or brokers and claims adjusters; and/or

- Other non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about our customers/claimants to those individuals who need to know that information to provide products and services to our customers/claimants or as permitted by law. We maintain physical, electronic, and procedural safeguards to guard your nonpublic personal information.

*Residents of California:*

You may request to review and make corrections to recorded non-public personal information contained in our files. A more detailed description of your rights and practices regarding such information is available upon request. Please contact your agent/broker for instructions on how to submit a request to us.

Package: 000050 of 000085          Presiding Judge: HON. ANN BAILEY SMITH (630350)          Package: **000050 of 000085**

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT B

Package : 000051 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : **000051 of 000085**

Filed          18-CI-005229     09/07/2018          David L. Nicholson, Jefferson Circuit Clerk



iHealth
462 S 4th Street
Suite 1810
Louisville, KY 40202

July 13, 2017

Mr. Joe Niemczyk
Senior Claims Examiner
Markel Corporation
P.O. Box 2009
Glen Allen, VA 23058-2009
jniemczyk@MarkelCorp.com

Re:   **PROOF OF LOSS**
      Insured: iHealth Solutions, LLC
      Matter: B. Diachenko/Bronx-Lebanon Hospital
      File No.: EO401042

Dear Mr. Niemczyk:

Attached please find a completed Proof of Loss relating to a data security incident. We understand that Markel Corporation does not have a specific form or requirements for submitting a Proof of Loss, so please let us know if there is any additional information needed, and we will supplement the Proof of Loss.

Sincerely,

Venkat Sharma
Chief Executive Officer

cc: Tad Myre
    Kathie McDonald-McClure
    Lisa E. Underwood

---

**Elizabethtown KY   |   Louisville KY   |   Piscataway NJ   |   Pittsburgh PA   |   San Mateo CA**
www.iHealthInnovations.com

Filed          18-CI-005229     09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Filed        18-CI-005229   09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

## PROOF OF LOSS

| | |
|---|---|
| Insured: | iHealth Solutions, LLC |
| Address: | 462 South 4th Street, Suite 1800, Louisville, KY 40202 |
| Insurer: | Evanston Insurance Company (of Markel Service, Incorporated) |
| Dates of Loss: | Between May 2-11, 2017 |
| Policy Number | EO866785-0 |
| File Number: | EO401042 |
| Matter: | B. Diachenko/Bronx-Lebanon Hospital |

At time of loss, iHealth Solutions, LLC d/b/a/ iHealth Innovations ("iHealth"), 462 South 4th Street, Suite 1800, Louisville, KY 40202, was insured by Evanston Insurance Company under the above-referenced policy of insurance against cyberliability losses, according to the terms and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto.

**I.    What Happened.** iHealth assists Bronx-Lebanon Hospital Center ("BLHC") with billing for health care services. To perform these services, iHealth stores patient health information on its servers. Accordingly, iHealth is a "business associate" of BLHC as that term is defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and has a HIPAA Business Associate Agreement ("BAA") with BLHC, a copy of which was sent to Markel on May 8, 2017, and is attached hereto as Exhibit A.

On May 2 and 3, 2017, Bob Diachenko, a data security researcher working for Kromtech, accessed health information on a particular iHealth server. Neither Diachenko nor Kromtech had been engaged by either iHealth or BLHC, and they were not authorized to access this information. On May 3, 2017, Diachenko reached out to notify iHealth by sending a message to iHealth's Twitter account and by sending an email to an email address on iHealth's website (info@ihealthinnovations.com). The Twitter message stated, in part, that there was a "misconfiguration of [iHealth's] RSYNC protocol" and the email stated, in part, that "IP 208.85.253.54 is running leaky remote synchronization protocol (RSYNC) on port 873". A copy of these messages are enclosed at Exhibit B. The messages indicated that Diachenko was able to access patient health information on the iHealth server.

Sometime between May 2 and May 11, 2017, Diachenko shared his discovery and an excerpt of patient files with two journalists, Leslie Packer, Ph.D., a licensed psychologist who manages DataBreaches.net, and Jummy Olabanji, a reporter for WNBC-TV News 4 New York. On May 9, 2017, Dr. Packer posted redacted excerpts of a patient record in an article she posted to DataBreaches.net. On May 11, 2017, Jummy Olabanji stated in a WNBC-TV News 4 broadcast that she received patient records in her inbox and the WNBC-TV's broadcast of her reporting displayed redacted excerpts from three different patient records.

Filed        18-CI-005229   09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Package: 000053 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000053 of 000085

Filed        18-CI-005229   09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

The information accessed by Diachenko and shared with the two reporters included patient name, type of treatment or procedure, diagnoses, and dates of service, and in some cases included a social security number; it did not include financial information.

## II.  What iHealth Did in Response.

On the morning of May 4, 2017, iHealth contacted its legal counsel Wyatt Tarrant & Combs, LLP ("Wyatt") about the incident.  iHealth also contacted its local insurance broker, Richard P. Lewis at Robert H. Clarkson Insurance, who notified Markel Services, Incorporated ("Markel") about the incident in accordance with the iHealth policy referenced above. Markel acknowledged receipt of a claim by letter dated May 5, 2017.  Joseph Niemczyk, Senior Claims Examiner, Markel – Claims, New York, New York, was assigned as iHealth's contact for this claim.

On May 8, 2017, Kathie McDonald-McClure of Wyatt spoke with Mr. Niemczyk about the incident and provided the following to him in a follow-up email:

- a timeline of events;
- the Wyatt engagement letter (Exhibit C);
- the Kroll engagement letter and BAA, and draft Master Services Agreement and Scope of Work with Kroll; and
- a copy of the above-referenced BAA between iHealth and BLHC.

Legal Counsel. Upon receipt of the Wyatt engagement letter and information about its Data Security & Privacy practice, Mr. Niemczyk approved of Wyatt's engagement to provide legal guidance to iHealth regarding the investigation of, response to and mitigation for a suspected disclosure of personal identifying information in a data security incident that impacted patients of BLHC.  Wyatt assisted iHealth with a variety of matters in connection with the incident, including but not limited to: the internal and outside consultant investigation of the unauthorized access, reestablishing a secure connection for data transmission between iHealth and BLHC, the legal analysis required by applicable state and federal confidentiality laws, coordinating with all of the parties involved, including but not limited to the Kroll forensic and security consultants, BLHC and its legal counsel, the PR consultant, the two journalists and their representatives, communications with Diachenko, and law enforcement and government regulatory agencies. Wyatt also assisted iHealth in the formal notification of affected individuals, law enforcement, and regulators in a manner complying with HIPAA, state data breach notification laws and other requirements.  Wyatt has been providing regular updates by phone and by e-mail to Markel on the progress of the investigation, response and mitigation.

PR Consultant. During a phone conversation with Wyatt on May 9, 2017, Markel consented to engaging Daniel J. Edelman, Inc. ("Edelman"), a crisis management public relations firm with a dedicated data security and privacy communication team. Edelman, iHealth, and Wyatt entered into a Letter of Agreement dated May 9, 2017 which includes a Statement of Work, a copy of which is attached as Exhibit D.

*Page 3 of 7*

Package : 000054 of 000085              Presiding Judge: HON. ANN BAILEY SMITH (630.50)        Package: 000054 of 000085

Filed        18-CI-005229   09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Forensics/Security Consultant. Also during a phone conversation with Wyatt on May 9, 2017, Markel consented to engaging Kroll, a global leader in risk mitigation and response with extensive experience helping people who have sustained an unintentional exposure of confidential data. Kroll, iHealth and Wyatt entered into a Statement of Work (Job Number SO03847104) for forensic work effective as of May 9, 2017 a copy of which is attached as Exhibit E. On May 10, 2017, Kroll, iHealth and Wyatt entered into a Statement of Work (Job Number SO3847110) relating to a Server Assessment so that the connection could be reinstated securely between iHealth and BLHC as part of the remediation process. A copy of that Statement of Work is attached as Exhibit F.

In the meantime, BLHC's outside legal counsel negotiated with Diachenko to destroy the all data he obtained from the iHealth server pertaining to BLHC patients. On May 16, 2017, BLHC counsel obtained such a certification from Diachenko. A copy of this Diachenko certification is attached as Exhibit G.

On May 18, 2017, Kroll confirmed that unauthorized access occurred on May 2, 2017 and May 3, 2017 to the iHealth server in question by an IP computer address that Diachenko confirmed was under his control ("Diachenko's IP Address"). Kroll's investigation also found that the access was limited to specific directories on the server that were configured as part of a synchronization/data copying process (referred to as rsync). Additionally, Kroll determined that only 16 megabytes of the approximate 90 gigabytes of information on the iHealth server had been transferred to Diachenko's IP Address. Kroll sent written confirmation of these findings in an email to Wyatt on May 22, 2017, which Wyatt forwarded to Markel with a further status update on the same date. A copy of this email with the Kroll email of its findings is attached as Exhibit H. *(A draft report of Kroll's more detailed forensic findings was supplied to iHealth on June 27, 2017; it is not included herein for security reasons but access can be provided to Markel via the Wyatt ShareFile.)*

Further Internal Investigation. Wyatt reached out to Diachenko to investigate what information had been shared with the reporters. Because Diachenko had destroyed all the files, he was unable to identify files he had transferred to his IP Address on May 2 or 3, 2017, and that he had shared with the reporters. However, he estimated that he had shared not more than 5 megabytes with the reporters. Upon inquiry and negotiation by Wyatt and counsel for iHealth with legal counsel for Dr. Packer, she ultimately provided a list of all the files that Diachenko had shared with her. Diachenko confirmed and certified that he had shared the same set of patient files with both Dr. Packer and Jummy Olabanji. A copy of Diachenko's Certification to iHealth dated June 19, 2017 is attached as Exhibit I. A further internal investigation of the list of files supplied by Dr. Packer provided evidence that the records of 267 unique patients were shared by Diachenko with Dr. Packer and Jummy Olabanji. Wyatt and counsel for BLHC obtained assurances in writing from representatives for Dr. Packer and Ms. Olabanji that all copies of the information they received were destroyed. A copy of these assurances from representatives of the reporters are attached as Exhibit J and Exhibit K.

*Page 4 of 7*

Package: 000055 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000055 of 000085

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Notification and ID Monitoring Services.  On June 20, 2017, Kroll, Wyatt, and iHealth entered into Statement of Work for data breach notification and monitoring services, a copy of which is attached as Exhibit L. Under this statement of work, Kroll was also engaged to operate a call center with a toll free number (as required by HIPAA) to field calls from affected persons about the incident and to provide identity monitoring services. iHealth chose to provide identity monitoring services at no cost to affected persons for one year to help relieve concerns and restore confidence following this incident. These identity monitoring services include one bureau credit monitoring, Kroll's Web Watcher product (monitors the internet for evidence of the enrollee's personal information), unlimited access to consultations with a fraud specialist, and unlimited access to a licensed investigator for victims of identify theft.  Kroll mailed the notification of the incident the affected BLHC patients (266 rather than 267 because one person was homeless without an address). A copy of the sample notification is attached as Exhibit M.

Spanish Translation Services.  Wyatt engaged Vocalink to provide translation services for the notice letters because a large percentage of the BLHC patients receiving the letters speak Spanish as their first language. Vocalink's invoices (#2017-1168 and #2017-1078) were for translation of the first draft of the notification letter and the 3-page enclosure. Vocalink's third invoice (#2017-1202) is for revisions that were necessary to align with the details revealed by Kroll's final draft forensic report supplied on June 27, 2017.

Remediation Measures.  Upon learning of Diachenko's discovery, iHealth has taken (or plans to take) the following additional remediation measures:

1.    iHealth immediately took the computer offline and the Hospital immediately suspended sending health information to iHealth until certain changes were made.

2.    iHealth is reviewing and updating its data security policies and procedures and has engaged an outside security firm to ensure that it has the right safeguards in place to help prevent this type of issue from happening in the future.

3.    iHealth notified Homeland Security and the FBI and cooperated with them during the investigation.

4.    The states and provinces of residence for the individuals notified were: New York (256); New Jersey (4); Pennsylvania (1); Florida (2); Ontario, Canada (1); Homeless (1) = 267.  Wyatt's research and analysis determined that reports should be made only to New York and New Jersey.  Note that the number of affected individuals that are to be reported to the designated government agencies in NY and NJ is limited to the number of individuals who had an element of personal information disclosed as defined by the applicable state data breach law.  Accordingly, the number of affected individuals reported to NY and NJ was less than 267, as further detailed below:

New York. On June 30, 2017, iHealth submitted a completed the prescribed Security Breach Notification form along with a cover email to the following three New York agencies:

Package : 000056 of 000085     Presiding Judge: HON. ANN BAILEY SMITH (630350)     Package:000056 of 000085

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229     09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Package : 000057 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

- o       New York State Attorney General's Office @ breach.security@ag.ny.gov
- o       New York State Division of State Police @ risk@nysic.ny.gov
- o       New York State Department of State Division of Consumer Protection Attention: Director of the Division of Consumer Protection @ security_breach_notification@dos.ny.gov

The only data element involved in the iHealth event that falls into New York law's definition of personal information was the Social Security Number ("SSN"). The New York law's definition does not include health information and the other data elements listed in the law (e.g., financial accounts with log-in information, etc.) were not part of the unauthorized disclosure. Accordingly, iHealth reported a total of 157 persons who had a SSN disclosed of which 154 were New York State residents. A copy of the cover email and New York report is attached hereto as Exhibit N.

New Jersey. On June 30, 2017, an email notification was sent to databreach@cyber.nj.gov, per instructions of the New Jersey Cybersecurity and Communications Integration Cell (NJCCIC). New Jersey does not have a prescribed reporting form. Like New York, the only data element involved in the iHealth event that falls into New Jersey's definition of personal information is SSN. There were only two (2) New Jersey residents who had a SSN disclosed and so iHealth reported a total of two (2) affected persons in New Jersey. A copy of the cover email and New Jersey report is attached hereto as Exhibit O.

4.       iHealth will also need to notify the U.S. Department of Health & Human Services' Office of Civil Rights on or before the 60th day of 2018.

**III. Losses as of May 31, 2017.** Losses based on invoice received to date total **$170,419.12.** Less the $2,500.00 retention, the current amount of the iHealth claim for reimbursement is **$167,919.12.** The June invoices are still being received and another Proof of Loss will be filed soon. The invoices are as follows:

A.       Kroll has submitted invoices totaling **$36,074.89** for work through May 31, 2017 which are attached hereto as Exhibit P. Invoice SO03847104 in the amount of $32,824.76 relates to the investigation of the security incident. Invoice SO03847110 in the amount of $3,250.13 relates to services needed to verify iHealth and BLHC could reestablish their computer connection.

B.       Wyatt has submitted one invoice thus far totaling **$111,554.17** for legal services provided in May 2017, such invoice which is attached as Exhibit Q. The invoice for services in June 2017 is being prepared and will be submitted as soon as it is available.

C.       Edelman has submitted an invoice for work relating to media communications through May 2017 in the amount of **$22,226.16** and such invoice is attached as Exhibit R.

*Page 6 of 7*

Filed          18-CI-005229     09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Package: 000058 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package: 000058 of 000085

D.   Vocalink has submitted three invoices totaling **$563.90**: Invoices #2017-1168, #2017-1078 and #2017-1202, for translation services in the amounts of $150.00, $263.90 and $150.00, respectively, and such invoices are attached as Exhibit S.

Additional invoices from Kroll, Wyatt and Edelman are expected relating to this incident and will be forwarded upon receipt. Thus far, no third party claims have been made but iHealth reserves its rights to submit such claims for coverage should they occur.

In accordance with the provisions of Kentucky Revised Statute 304.47-030, any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

I swear and affirm that this Proof of Loss is a true and accurate accounting of losses to iHealth as the result of the data security incident on the above referenced dates.

### VERIFICATION

Venkat Sharma, first being duly sworn, states that he is the CEO of iHealth Solutions, LLC (the "Company"), and that, based on a review of the books and records of Company, and other information discovered in the course of the Company's investigation of this matter, the facts and matters set forth above are true and correct to the best of his knowledge, information and belief.

_____

Venkat Sharma

COMMONWEALTH OF KENTUCKY   )
                                                        )   :SS
COUNTY OF JEFFERSON              )

The foregoing instrument was acknowledged before me this the 13th day of July, 2017, by Venkat Sharma, to me personally known, as the CEO of iHealth Solutions, LLC., a Kentucky LLC, and that said instrument was signed on behalf of said Company by proper authority and the instrument was the act of the Company for the purposes stated above.

My commission expires: _June 19, 2021_____

_____
Debra K. Dougherty
NOTARY PUBLIC

61645073.9

*Page 7 of 7*

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

# EXHIBIT C

Package 000059 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package: **000059 of 000085**

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

| | |
|---|---|
| **From:** | Lindsey Dean |
| **To:** | "vsharma@ihealthinnovations.com" |
| **Cc:** | Niemczyk, Joseph; McClure, Kathie; "soliven@cintermed.com"; Todd M. Rowe |
| **Subject:** | iHealth Solutions, LLC; Markel File No. EO401042 |
| **Date:** | Wednesday, December 20, 2017 11:59:17 AM |
| **Attachments:** | CHICAGO1-#707049-v1-iHealth_Letter.PDF |

Mr. Sharma:

Please see the attached correspondence. Thank you.

Lindsey

**Lindsey D. Dean** | Associate

Tressler LLP
233 S. Wacker Drive, Suite 2200
Chicago, IL 60606
Telephone. 312-627-4123 | Fax: 312-627-1717

ldean@tresslerllp.com | www.tresslerllp.net | www.tresslerllp.com/lindsey-dean



CALIFORNIA | ILLINOIS | NEW JERSEY | NEW YORK | PENNSYLVANIA

Tressler LLP is a law firm and therefore this message, including attachments, is covered by the Electronic Communication Privacy Act, 18 U.S.C., sections 2510-2521, is CONFIDENTIAL and may also be protected by ATTORNEY/CLIENT PRIVILEGE. If you believe you received this e-mail in error, do not read it. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. If the reader of this message is not the intended recipient, I did not intend to waive and do not waive any privileges or confidentiality of this message or the attachments. Please reply to the sender that you have received the message in error, then delete it. Thank you.

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Package:000060 of 000085          Presiding Judge: HON. ANN BAILEY SMITH (630350)          Package: 000060 of 000085

Filed         18-CI-005229    09/07/2018      David L. Nicholson, Jefferson Circuit Clerk

# Tressler LLP

Todd M. Rowe
(312) 627-4180
trowe@tresslerllp.com

Lindsey Dean
(312) 627-4123
ldean@tresslerllp.com

Attorneys at Law
233 S. Wacker Drive,
22nd Floor
Chicago, Illinois 60606-6399
312/627-4000
Fax 312/627-1717
www.tresslerllp.com

December 20, 2017

**VIA EMAIL**

Mr. Venkat Sharma
I-Health Solutions, LLC
462 S. 4th Street, Suite 1810
Louisville, KY 40202
vsharma@ihealthinnovations.com

RE:   Insured:      iHealth Solutions LLC
      Matter:       Data Security Incident
      Claimant:     Bronx Lebanon Hospital
      Policy No.:   EO866785-0
      File No.:     EO401042
      Our File No.: 10988-121

Dear Mr. Sharma:

This firm was retained by Markel Service, Incorporated, the claims service manager for Evanston Insurance Company ("Evanston"), in connection with the data security incident that took place from approximately May 2, 2017 to May 11, 2017 (the "Incident"). This letter will serve to acknowledge receipt by Evanston Insurance Company ("Evanston") of communications and information exchanged with iHealth Solutions LLC ("iHealth") and its legal counsel, Wyatt Tarrant & Combs ("Wyatt") with respect to the Incident, including iHealth's July 13, 2017 Proof of Loss (the "POL") and multiple communications from Wyatt regarding payment of its invoices. This letter will further serve to acknowledge receipt of the letter from Bronx-Lebanon Hospital Center (the "BLHC") dated October 3, 2017, in which BLHC provides "written notice of [its] claim for Damages" under certain agreements between BLHC and iHealth (the "BLHC Demand") and the letter from the U.S. Department of Health and Human Services ("HHS"), Office for Civil Rights ("OCR") dated September 27, 2017 (the "OCR Investigation").

As set forth more fully below, Evanston has concluded that, subject to a full reservation of rights, there may be coverage for Claim Expenses, Damages and Regulatory Fines related to the OCR Investigation and any costs constituting Breach Mitigation Expenses and Loss, as those terms are defined   under Specified Professions Professional Liability Insurance Policy No. EO863111 issued by Evanston to iHealth (the "Policy"). Evanston has further concluded, based

Filed         18-CI-005229    09/07/2018      David L. Nicholson, Jefferson Circuit Clerk

California | Illinois | New Jersey | New York | Pennsylvania

Filed          18-CI-005229          09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 2

on the information provided by iHealth, there is no coverage for the BLHC Demand.  As concerns the Wyatt invoices submitted to Evanston by Wyatt in connection with the Incident, Evanston's investigation is ongoing.  As more fully described in this letter and Evanston's prior communications, Evanston hereby fully and completely reserves its rights with respect to the Incident.  In addition, Evanston reserves its right to supplement its coverage position as its investigation continues.  After your review of this letter, please contact the undersigned with any questions or concerns which you might have regarding Evanston's position as outlined in this letter.   This letter includes pertinent terms, definitions, and conditions of available coverage, and outlines additional information that Evanston requires to evaluate coverage.  This letter does not modify the terms, definitions, conditions or exclusions of the Evanston policy discussed herein.

**The Incident**

We understand that iHealth develops healthcare software and offers revenue cycle and practice management, credentialing and financial administration services.  In this capacity, iHealth assists BLHC with billing for healthcare services and stores BLHC patient health information on its servers.

On May 5, 2017, iHealth notified Evanston of the Incident.  According to iHealth's POL, on May 2 and 3, 2017, Bob Diachenko ("Diachenko"), a data security researcher working for Kromtech, accessed health information on an iHealth server.  Diachenko reached out to iHealth through Twitter an email to advise iHealth that Diachenko was able to access patient information on iHealth's server.  After receiving no response from iHealth, between May 2 and 11, 2017, Diachenko shared that he was able to access the iHealth server and excerpts of patient information with Leslie Packer, Ph.D, who manages DataBreaches.net, and Jummy Olabanji, a television reporter.  Dr. Packer posted redacted excerpts of a patient record on DataBreaches.net on May 9, 2017, and on May 11, 2017, Ms. Olabanji stated in a television broadcast that she received patient records in her inbox and displayed redacted excerpts from three different patient records.   iHealth has reported that the information accessed by Diachenko and shared with Dr. Packer and Ms. Olabanji included patient name, type of treatment or procedure, diagnoses, and dates of service, and certain social security numbers.

**The OCR Investigation**

By letter dated September 27, 2017, OCR advised iHealth that it received a breach report dated August 22, 2017 alleging that iHealth was not in compliance with the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information and the Breach Notification Rule Subpart D - Notification in Case of Breach of Unsecured Protected Health Information.  OCR accordingly advised that it was issuing data requests to iHealth as part of an investigation concerning iHealth's alleged violations of these laws.  Moreover, OCR stated that it may initiate a formal enforcement action which may result in the imposition of monetary

Package : 000062 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000062 of 000085

Filed   18-CI-005229   09/07/2018   David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 3

penalties or take other action in the event OCR's investigation results in a finding that iHealth failed to comply with the applicable provisions of the Privacy and Security Rules and/or the Breach Notification Rule.  OCR's letter encloses a number of data requests.

**The BLHC Demand**

On or about October 3, 2017, iHealth received the BLHC Demand.  The BLHC Demand advises that BLHC is terminating all of its agreements with iHealth effective January 3, 2018, including (1) a Professional Services Agreement dated on or about April 26, 2010 for billing and coding services; (2) the SOW for quality extraction and reporting services dated on or about February 1, 2015; (3) the SOWs for IT support services dated on or about February 1, 2016; (4) credentialing verification services; (5) charge load services; (6) the proposal for operating room charge capture dated on or about November 24, 2010; (7) the Population Health Dashboard Services Agreement dated on or about January 1, 2017 and (8) the website development and maintenance services for the BLHC Health Home (collectively, the "iHealth Agreements").  The BLHC Demand further advises that BLHC has incurred significant costs, expenses and damages in connection with the Incident, which BLHC purports will continue to grow as BLHC responds to the U.S. Department of Health and Human Services, Office of Civil Rights ("OCR") and to potential third party claims.  Accordingly, BLHC asserts that it is providing written notice of its claim for damages under the iHealth Agreements, including but not limited to the indemnification provision in the HIPAA Business Associate Agreement/Qualified Service Agreement.

**iHealth's Response**

iHealth submitted its sworn Proof of Loss dated July 13, 2017 (the "POL") to Evanston seeking payment of $167,919.12, including $36,074.89 incurred by Kroll Inc. ("Kroll"), $111,554.17 incurred by Wyatt, $22,226.16 incurred by Daniel J. Edelman, Inc. ("Edelman") and $563.90 incurred by Vocalink.  Kroll provided both forensic investigation services and notification and identification monitoring services to iHealth in connection with the Incident.  Wyatt has provided legal services to iHealth as part of its Incident response and response to the OCR Investigation and BLHC Demand.  We understand that Edelman provided public relations services and Vocalink provided translation services for the notification letters to affected individuals.

Since iHealth's submission of the POL, iHealth has submitted additional invoices, including invoices totaling an additional $262,447.00 from Wyatt, invoices totaling $11,709.15 from Kroll and an invoice for $5,138.43 from Edelman.

**The Policy**

The request for coverage for the Incident is being evaluated for coverage under the Specified Professions Professional Liability Insurance Policy No. EO866785 issued by Evanston to iHealth for the period March 31, 2017 to March 31, 2018 (the "Policy Period").  The Policy is

Package: 000063 of 000085                    Presiding Judge: HON. ANN BAILEY SMITH (630350)                    Package : 000063 of 000085

Filed         18-CI-005229   09/07/2018         David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 4

subject to Common Policy Conditions, as well as specific terms and conditions applicable to Coverage Part B for Databreach Insurance Coverage (MEEO 5001 11 14) ("Databreach Coverage Part").[1]  The Databreach Coverage Part provides a $1 million each Claim Limit of Liability applicable to Coverage B.1., subject to a $2,500.00 each Claim deductible; a $1 million each Unauthorized Access Limit of Liability applicable to Coverage B.2., subject to a $2,500 each Unauthorized access deductible and a $50,000 supplementary payments limit applicable to the Breach Mitigation Expense Coverage.  Coverage under the Databreach Coverage Part is subject to a $1 million Aggregate Limit of Liability and a March 31, 2014 retroactive date applicable to Coverage B.1.  Coverage is also subject to the following endorsements:

| FORM NUMBER | FORM NAME |
| --- | --- |
| IL 12 01 11 85 | Policy Changes (Additional Named Insured) |
| MEIL 5200-25% 07 04 | Minimum Earned Premium Endorsement |
| ZZ-42001-04 01 15 | Certified Acts of Terrorism Endorsement |
| IL 12 01 11 85 | Policy Changes (Amendment of Named Insured) |

In connection with our coverage analysis, we direct your attention to the following provisions of the Policy:

**COMMON POLICY CONDITIONS**

All Coverage Parts included in this policy are subject to the following conditions.

\* \* \*

**G.    OTHER INSURANCE**

This insurance shall be in excess of the applicable Deductible stated in the Declarations and any other insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

\* \* \*

**K.    ASSISTANCE AND COOPERATION OF THE INSURED**

\* \* \*

---

[1] iHealth also purchased coverage under Coverage Part A (Professional Liability) of the Policy.  However, we have analyzed coverage under the Databreach Coverage Part only.  If you believe that a coverage part other than Coverage Part B may provide coverage for the matter, please advise the undersigned.

Filed         18-CI-005229   09/07/2018         David L. Nicholson, Jefferson Circuit Clerk

Package : 000064 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630356)

Package : 000064 of 000085

18-CI-005229   09/07/2018   David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 5

The Insured shall not, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur any expense without the prior written consent of the Company, such consent not to be unreasonably withheld.  Any costs and expenses incurred by the Insured prior to the Insured giving written notice of a Claim to the Company shall be borne by the Insured and will not constitute satisfaction of the Deductible.

\* \* \*

### Databreach<sup>SM</sup> Insurance Coverage Part For Specified Professions

\* \* \*

In consideration of the premium paid, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to the terms, conditions and limitations of this policy, the Company and the Insured agree as follows:

**THE INSURED**

A.      The unqualified word "Insured," either in the singular or plural, means:

1.      The Named Insured herein defined as the person(s) or organization(s) stated in Item 1. of the Declarations;

\* \* \*

**INSURING AGREEMENTS**

A.      **Coverage B.1. - Data Breach and Privacy Liability Coverage - Claims Made Coverage:**

The Company shall pay on behalf of the Insured, in excess of the Deductible stated in Item 5.B. of the Declarations, all sums which the Insured shall become legally obligated to pay as Damages and Regulatory Fines both of which are a result of a Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims, Loss and Expenses A., Claim Reporting Provision by reason of an Unauthorized Access or a Potential Unauthorized Access, provided:

1.      The entirety of the Unauthorized Access or the discovery of the Potential Unauthorized Access happens during the Policy Period or on or after the Retroactive Date stated in Item 5.B. of the Declarations and before the end of the Policy Period; and

Package: 000065 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630359)

Package: 000065 of 000085

18-CI-005229   09/07/2018   David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 6

**2.** Prior to the effective date of this Coverage Part the Insured had no knowledge of such Unauthorized Access, Potential Unauthorized Access or any computer security incident, intrusion, breach, compromise, theft, loss or use of the Named Insured's Electronic Communications System which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.

**B.** **Coverage B.2. — Data Breach Loss to Insured Coverage — Occurrence Coverage:**

The Company shall indemnify the Named Insured for the amount of Loss which is in excess of the Deductible stated in Item 5.B. of the Declarations and which results directly from an Unauthorized Access which occurs during the Policy Period and is reported to the Company pursuant to Section Claims, Loss and Expenses B., Loss Reporting Provision, provided:

1. Prior to the effective date of this Coverage Part the Insured had no knowledge such Unauthorized Access had occurred in whole or in part, and if any Insured knew prior to the Policy Period that the Unauthorized Access had occurred, then any continuation, change or resumption of such Unauthorized Access during or after the Policy Period will be deemed to have been known prior to the Policy Period;

2. Unauthorized Access, which occurs during the Policy Period and was not, prior to the Policy Period known to have occurred by any Insured, includes any continuation, change or resumption of that Unauthorized Access after the end of the Policy Period; and

3. Unauthorized Access will be deemed to have been known to have occurred at the earliest of any Insured:

   a. Reporting all, or any part, of the Unauthorized Access to the Company, any other insurer or any insurance representative;

   b. Incurring Loss or Breach Mitigation Expense because of the Unauthorized Access; or

   c. Becoming aware by any other means that Unauthorized Access has occurred or has begun to occur.

**SUPPLEMENTARY PAYMENTS**

**A.** **Breach Mitigation Expense Coverage:** The Company shall, subject to the prior written consent of the Company, reimburse the Named Insured up to the Limit

Package: 000066 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : 000066 of 000085

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 7

of Liability stated in item 5.B. of the Declarations for Supplementary Payments A. Breach Mitigation Expense for the reasonable cost actually incurred by the Named Insured for Breach Mitigation Expense which results directly from an Unintentional Data Compromise which occurs during the Policy Period and is reported to the Company pursuant to Section Claims, Loss and Expenses C., provided:

1.    The entirety of the Unintentional Data Compromise occurs during the Policy Period; and

2.    Prior to the effective date of this Coverage Part the Insured had no knowledge such Unintentional Data Compromise of:

   a.    The Named Insured's Electronic Communications System, including any device which the Named Insured permits to be connected to its Electronic Communications System; or

   b.    The Electronic Communications System of a third party responsible for storing and securing the data of the Named Insured;

had occurred in whole or in part, which may have led a reasonable person in the Insured's position to conclude that incurring such expenses was likely, and if any Insured knew prior to the Policy Period that such Unintentional Data Compromise had occurred, then any continuation, change or resumption of such Unintentional Data Compromise during or after the Policy Period will be deemed to have been known prior to the Policy Period; and

3.    Unintentional Data Compromise will be deemed to have been known to have occurred at the earliest of any Insured:

   a.    Reporting all, or any part, of an Unauthorized Access or Potential Unauthorized Access to the Company, any other insurer or any insurance representative;

   b.    Incurring Loss or Breach Mitigation Expense because of an Unauthorized Access or Potential Unauthorized Access; or

Filed          18-CI-005229 Becoming aware by any other means that an Unintentional Data Compromise has occurred or has begun to occur.

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 8

The Named Insured must submit to the Company satisfactory written proof of payment of such costs within one (1) year after the expiration or cancellation of this Coverage Part.

Any amount that the Company shall reimburse for costs actually incurred by the Named Insured pursuant to this section shall be in addition to the Aggregate Limit of Liability stated in Item 5.B. of the Declarations and shall not be subject to the Deductible.   Notwithstanding the foregoing however, if similar expenses become part of a judgment, award or settlement, such expenses shall not be subject to coverage under this Supplementary Payments coverage.

\* \* \*

**DEFINITIONS**

\* \* \*

C.    **Breach Mitigation Expense** means expenses incurred with the prior written consent of the Company for:

1.    The services of a public relations professional, or other publicity expenses that are recommended by a public relations professional to respond to any actual adverse publicity in the media, that is the result of an Unauthorized Access or Potential Unauthorized Access;

2.    Expenses, including but not limited to notification and related legal fees, that are incurred to comply with a Security Breach Notice Law and that are the result of an Unauthorized Access or Potential Unauthorized Access; and

3.    Expenses associated with voluntarily providing credit monitoring services to individuals effected by an Unauthorized Access or Potential Unauthorized Access.

\* \* \*

D.    **Claim** means:

1.    With regard to Coverage B.1. the Insured's receipt of:
   a.    A written demand for damages, including a written demand that the Insured toll or waive a statute of limitations;
   b.    The service of suit or institution of arbitration proceedings against the Insured; or

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Package: 000068 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package : **000068 of 000085**

Filed        18-CI-005229    09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 9

    c.   A written notice of the institution of a charge against the Insured by any Authority or any administrative proceeding initiated by an Authority, including any investigation, conciliation meeting or hearing;

All as a result of an Unauthorized Access or Potential Unauthorized Access.

E.    **Claim Expenses** means reasonable and necessary amounts incurred by the Company, or by the Insured with the prior written consent of the Company, in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, that Claim Expenses shall not include:

(1) salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or

(2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

\* \* \*

F.    **Damages** means the monetary portion of any judgment, award or settlement, including punitive or exemplary damages where insurable; provided, however, Damages shall not include:

1.    Multiplied portions of damages in excess of actual damages, including trebling of damages;

2.    The cost of any modifications or changes to the Insured's security measures, procedures, software or hardware required or agreed to by the Insured to satisfy a judgment, award or settlement;

3.    Any cost required to repair, build or modify property to comply with any award by a court, administrative order, arbitration award or any similar judgment;

4.    Taxes, criminal or civil fines assessed against an Insured, or attorneys' fees of a party other than an Insured, other penalties imposed by law or Regulatory Fines;

Filed        18-CI-005229    09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Filed        18-CI-005229     09/07/2018           David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 10

5.      Sanctions;

6.      Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed; or

7.      The return, withdrawal, reduction or restitution or payment of any fees, profits charges or royalties for services or consideration and/or any expenses paid or payable to the Insured for services or goods.

The insurability of such punitive damages shall be determined under the internal laws of any applicable jurisdiction most favorable to the Insured, including without limitation the jurisdiction in which the Named Insured, the Insured, the Company, this policy or such Claim is located.

\* \* \*

H.      **Electronic Communications System** means any wired, wireless, radio, electromagnetic, photo-optical or photo-electronic facility for the transmission of electronic communications; any electronic data processing system, network or related electronic equipment for the storage of such communications; and any computer.

I.      **Employee** means any natural person (except a director or trustee of the Named Insured, if the Named Insured is a corporation or trust, who is not also an officer or employee thereof) while in the regular service of the Named Insured in the ordinary course of the Named Insured's business and whom the Named Insured compensates by salary, wages or commissions and has the right to govern and direct the performance of such service. Employee includes any Leased Worker and any Temporary Worker but does not include any independent contractor or consultant of the Named Insured or any Employee of the Named Insured provided as a staffing service employee or a Leased Worker to work at the worksite of a client of the Named Insured.

J.      **Extra Expense** means necessary expenses that the Named Insured would not have incurred if there had not been a Loss resulting from an Unauthorized Access.

K.      **Forensic Expense** means reasonable and necessary costs incurred by the Named Insured to engage the services of a third party computer security expert to determine the existence and cause of any Unauthorized Access.

Filed        18-CI-005229     09/07/2018           David L. Nicholson, Jefferson Circuit Clerk

\* \* \*

Package: 000070 of 000085        Presiding Judge: HON. ANN BAILEY SMITH (630550)        Package: 000070 of 000085

Filed          18-CI-005229    09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 11

N.     **Loss** means:

1.     Forensic Expense and reasonable and necessary costs incurred by the Named Insured to restore with due diligence and dispatch the Named Insured's Electronic Communications System to the condition that existed prior to an Unauthorized Access, including reconstruction of programs, electronic data and media which form a part of the Named Insured's Electronic Communications System;

2.     Extra Expense incurred by the Named Insured in continuing the conduct of the Named Insured's business during the period from the time of the discovery of an Unauthorized Access to the time the Named Insured's Electronic Communications System is or can be restored with due diligence and dispatch to the condition that existed prior to an Unauthorized Access;

3.     Subject to prior approval by the Company, expenses necessarily incurred by the Named Insured to reduce Loss under Coverage B.2., after an Unauthorized Access has happened and to the extent that such expenses do not exceed the value of the Loss which such expenses are incurred to reduce;

\* \* \*

Provided, however, Loss shall not include:

a.     Any cost or charges associated with building, modifying or upgrading the Named Insured's Electronic Communications System, or any software, security measures or procedures;

\*\*\*

b.     Expenses incurred by the Insured in establishing the amount of any Loss covered under this Coverage Part; or

e.     Loss of business income.

O.     **Policy Period** means the period from the inception date of this Coverage Part to the Coverage Part expiration date stated in Item 3. of the Declarations, or the effective date of any earlier cancellation or termination.

Package:000071 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630356)

Package: 000071 of 000085

\* \* \*

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 12

R.   **Private Data** means data containing an individual's:

1.   Drivers license or other state-issued identification number; social security number; unpublished telephone number; savings account, checking account, credit card or debit card number each when in combination with the security code, access code, password or pin for such account or card number;

2.   "Nonpublic personal information" as defined in the Gramm-Leach-Bliley Act of 1999, as amended, and regulations issued pursuant thereto;

3.   "Protected healthcare information" as defined in the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended, and regulations issued pursuant thereto, and medical and healthcare information;

4.   Private personal information as defined under a Security Breach Notice Law; and

5.   Private personal information as defined under the law of a country other than the United States, which law is intended to provide for the protection of such private personal information;

not including any lawfully available data accessible by the general public.

\* \* \*

T.   **Regulatory Fines** means civil fines and penalties assessed against the Insured by an Authority as a result of a Claim subject to covered under Coverage B.1. of this Coverage Part; provided however, the Company's total obligation under this Coverage Part for all Regulatory Fines shall not exceed twenty five thousand dollars ($25,000) which amount is a part of and not in addition to the Limits of Liability.

U.   **Security Breach Notice Law** means any law, statute or regulation within the United States of America, its territories or possessions, Puerto Rico or Canada requiring the Named Insured to notify individuals of the compromise or possible compromise of the security of their confidential information in the Named Insured's care, custody or control and the European Union (EU) Data Protection Act of 1995.

Package 000072 of 000085                    Presiding Judge: HON. ANN BAILEY SMITH (630350)                    Package: 000072 of 000085

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

\* \* \*

Filed          18-CI-005229 · 09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 13

Package : 000073 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

V.   **Unauthorized Access** means a breach of the Named Insured's security measures, systems, procedures, or stated privacy policy, or any intentional violation, interception, or use or misuse of the Named Insured's Electronic Communications System, whether or not for profit or gain, by any person, without the permission, knowledge or ratification of the Insured.  Unauthorized Access also includes:

1.   Access to the Named Insured's Electronic Communications System that is with the insured's permission where such permission is the result of fraud or deception;

2.   Use of the Named Insured's Electronic Communications System by a party authorized by the Insured to use such system, who does so for an unauthorized purpose;

3.   The introduction of programs into the Named Insured's Electronic Communications System which contain fraudulent or destructive instructions or code including any inadvertent transmission of such programs to a third party;

4.   A credible threat or an extortion demand received by the Named Insured threatening or portending loss, injury or damage to:

   a.   The Named Insured's Electronic Communications System, including programs, electronic data and media which form a part of the Insured's Electronic Communications System; or

   b.   Money, securities, bonds or similar financial instruments, solely to the extent that record of such is maintained in digital or electronic format on the Named Insured's Electronic Communications System;

   for the purpose of extorting money or other valuable consideration from the Named Insured; and

5.   Failure to prevent a denial of service attack on the Named Insured's Electronic Communications System or to prevent the use of the Named Insured's Electronic Communications System by an unauthorized user or code to launch a denial of service attack on a third party;

Package : 000073 of 000085

* * *

Mr. Venkat Sharma
December 20, 2017
Page 14

X.   **Unintentional Data Compromise** means any computer security incident, intrusion, breach, compromise, theft, loss or misuse of the Named Insured's customer's(s') and/or employee's(s') Private Data.

## THE EXCLUSIONS

A.   With respect to all Coverages, this Coverage Part does not apply to any Claim, Loss or Supplementary Payments:

* * *

4.   Based upon or arising out of liability of others assumed by the Insured under any contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of such contract or agreement.

* * *

## LIMITS OF LIABILITY

A.   **Limit of Liability - Data Breach and Privacy Liability Coverage – Each Claim**:  The liability of the Company under Coverage B.1. for the combined total of Damages, Regulatory Fines and Claim Expenses for any Claim first made against the Insured during the Policy Period or Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims, Loss and Expenses A., Claim Reporting Provision, for each Claim shall not exceed the Each Claim Limit of Liability stated in Item 5.B. and 7. of the Declarations for Coverage B.1.

B.   **Limit of Liability - Data Breach Loss to Insured Coverage - Each Unauthorized Access**:  The liability of the Company under Coverage B.2. for all Loss resulting directly from each Unauthorized Access which occurs during the Policy Period and is reported to the Company pursuant to Section Claims, Loss and Expenses B., Loss Reporting Provision, shall not exceed the Each Unauthorized Access Limit of Liability stated in Item 5.B. and 7. of the Declarations for Coverage B.2.

C.   **Limit of Liability - Data Breach and Privacy Liability Coverage and Data Breach Loss to Insured Coverage - Coverage Part Aggregate**:  Subject to the above Limits of Liability A. and B., the total liability of the Company shall not exceed the Coverage Part aggregate Limit of Liability as stated in Item 5.B. and 7. of the Declarations:

1.   For all Damages, Regulatory Fines, as applicable, and Claim Expenses arising out of all Claims first made against the Insured during the Policy Period and the Extended Reporting Period, if exercised, under Coverage B.1.; and

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 15

Package : 000075 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

2.      For all Loss incurred by the Named Insured which results directly from Unauthorized Access which occurs during the Policy Period under Coverage B.2.

**D.**      **Limit of Liability - Supplementary Payments A. Breach Mitigation Expense All Unintentional Data Compromises**:   The liability of the Company under Supplementary Payments A. for all Breach Mitigation Expense resulting directly from any and all Unintentional Data Compromises which occur during the Policy Period and are reported to the Company pursuant to Section Claims, Loss and Expenses B., Loss Reporting Provision, shall not exceed the Supplementary Payments A. Breach Mitigation Expense Limit of Liability stated in Item 5.B. of the Declarations.

**E.**      **Deductible**:

\* \* \*

3.      In the event that the same Unauthorized Access results in a Claim that is covered under Coverage B.1. and a Loss that is covered under Coverage B.2., only one Deductible shall apply which Deductible shall be the higher of the applicable Deductibles.

\* \* \*

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

**A.**      **Defense and Investigation**:   With regard to Coverage B.1. the Company shall have the right and duty to defend the Insured and to investigate any Claim to which coverage under this Coverage Part applies pursuant to the following provisions:

1.      Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5.B. and 7. of the Declarations.   Such Claim Expenses shall reduce the applicable Limits of Liability and shall be applied against the applicable Deductible.   The Company shall have no obligation to pay any Damages or Regulatory Fines or to defend or continue to defend any Claim or to pay Claim Expenses after the applicable Limits of Liability stated in Item 5.B. and 7. of the Declarations have been exhausted by payment(s) of Damages, Regulatory Fines and/or Claim Expenses.

Package : 000075 of 000085

2.      The Company shall select defense counsel; provided, however, that if the law of the state of the Named I domicile, stated in Item 2. of the

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Filed      18-CI-005229   09/07/2018      David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 16

Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

a.   Providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages and Regulatory Fines, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

b.   Providing any other reasonable information requested;

c.   Fully itemized billing on a periodic basis; and

d.   Cooperating with the Company and the Insured in resolving any discrepancies;

And the fees and costs incurred by such defense counsel, including those fees and costs generated by defense counsel's cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5.B. and 7. of the Declarations. Such Claim Expenses shall reduce the applicable Limits of Liability and shall be applied against the applicable Deductible.

\* \* \*

C.   **Investigation, Loss or Breach Mitigation Expense Payment**: The Company may, at its sole discretion, investigate any Loss, any Breach Mitigation Expense, any Unintentional Data Compromise and any Unauthorized Access or Potential Unauthorized Access. The Company will pay for covered Loss and Breach Mitigation Expense incurred by the Named Insured in excess of the Deductible, if applicable. The Company will indemnify the Named Insured within sixty (60) days after it receives the sworn Proof of Loss under Coverage B.2. or satisfactory written proof of payment of Breach Mitigation Expenses, provided:

1.   The Insured has complied with all the terms of this Coverage Part; and

2.   The Company and the Named Insured have agreed with the items included within and the amounts documented in the Named Insured's

Filed      18-CI-005229   09/07/2018      David L. Nicholson, Jefferson Circuit Clerk

Package: 000076 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630250)

Package: 000076 of 000085

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 17

sworn Proof of Loss and satisfactory written proof of payment of Breach Mitigation Expenses.

* * *

C.      **Breach Mitigation Expense Reporting Provision**:  It is a condition precedent to coverage afforded by this Coverage Part under Section Supplementary Payments A., Breach Mitigation Expense Coverage, that the Named Insured shall give to the Company written notice as stated in Item 11. of the Declarations as soon as practicable and in no event later than sixty (60) days after the end of the Policy Period of any Unintentional Data Compromise, Unauthorized Access or Potential Unauthorized Access which occurs during the Policy Period.

The Named Insured must:

1.      Submit to the Company satisfactory written proof of payment of such Breach Mitigation Expenses within one (1) year after the expiration or cancellation of this Coverage Part[.]

## COVERAGE ANALYSIS

### Coverage B.1. – Data Breach and Privacy Liability Coverage

Coverage B.1., Data Breach and Privacy Liability Coverage provides, in pertinent part, that Evanston "shall pay on behalf of the Insured ... all sums which the Insured shall become legally obligated to pay as Damages ... which are the result of a Claim first made against the Insured during the Policy Period ... by reason of an Unauthorized Access or a Potential Unauthorized Access." The definition of "Claim" encompasses, in relevant part, "a written demands for damages" or "a written notice of the institution of a charge against the Insured by any Authority or any administrative proceeding initiated by an Authority including any investigation, conciliation meeting or hearing" all as a result of an Unauthorized Access or Potential Unauthorized Access.  The term "Authority" includes any agency of a federal state or local government of the United States, which is charged with the administration or enforcement of laws or regulations relating to the use, transfer or storage of electronic communications or data storage systems.   The Policy defines "Unauthorized Access", in relevant part, as "a breach of the Named Insured's security measures, systems, procedures, or stated privacy policy, or any intentional violation, interception, or use or misuse of the Named Insured's Electronic Communications System, whether or not for profit or gain by any person, without the permission, knowledge or ratification of the Insured."

To the extent the Incident involves a breach of iHealth's security measures, systems, procedures, stated privacy policy, or an intentional violation, interception or misuse of iHealth's Electronic Communications System, without iHealth's permission, knowledge or ratification, the Incident constitutes an Unauthorized Access, as that term is defined and used in the Policy.  The

Filed        18-CI-005229    09/07/2018      David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 18

BLHC Demand states that BLHC is "providing written notice of [its] claim for Damages under the iHealth Agreements" resulting from the Incident.  Accordingly, the BLHC Demand constitutes a Claim.

OCR's September 27, 2017 letter constitutes a written notice of an investigation by an agency of a federal state or local government charged with the administration or enforcement of laws or regulations relating to the use, transfer or storage of electronic communications or data storage systems.  As such, the OCR Investigation may also constitute a Claim, as that term is defined and used in the Policy.

Section F.1. in the Limits of Liability Section in the Policy provides as follows:

> With regard to Coverage B.1., more than one Claim arising out of a single Unauthorized Access or Interrelated Unauthorized Accesses shall be treated as a single Claim.  Such single Claim shall be deemed first made on the date on which the earliest Claim arising out of such Unauthorized Access or Interrelated Unauthorized Accesses is made[.]

As the BLHC Demand and the OCR Investigation both arise out of the Incident, a single Unauthorized Access, the BLHC Demand and the OCR Investigation may constitute a single Claim deemed first made on or about September 27, 2017, when iHealth received the OCR letter notifying it of the OCR Investigation.

However, for the reasons set forth below, coverage for the BLHC Demand is barred in its entirety pursuant to Exclusion A.4. in the Policy (the "Contract Exclusion").

**Contract Exclusion**

The Contract Exclusion bars coverage for any Claim, Loss or Supplementary Payments:

> Based upon or arising out of liability of others assumed by the Insured under any contract or agreement; provided, however, this exclusion shall not apply to liability an Insured would have in the absence of such contract or agreement.

As noted above, the BLHC Demand provides notice of its claim for damages against iHealth "under the iHealth Agreements."  The BLHC Demand further specifically refers to an indemnification provision in the HIPAA Business Associate Agreement/Qualified Service Agreement between BLHC and iHealth.  BLHC's claim for damages in the BLHC Demand is predicated entirely upon iHealth's alleged liability to BLHC under the iHealth Agreements, as BLHC only seeks relief pursuant to the iHealth Agreements. As such, the BLHC Demand is based upon or arises out of the liability of others assumed by iHealth under a contract or agreement,

Package : 000078 of 000085

Package : 000078 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Filed          18-CI-005229    09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 19

and, the Contract Exclusion therefore applies to bar coverage for the BLHC Demand. Evanston accordingly denies a duty to defend or indemnify iHealth in connection with the BLHC Demand.

### Duty to Defend

Please be advised that any defense obligation Evanston may have related to the OCR Investigation under Coverage B.1 is governed Section A. – Defense and Investigation in the "Defense, Settlements and Claim Expenses" Section in Coverage B (the "Defense Provision"). The Defense Provision states, in relevant part:

A.     **Defense and Investigation:**  With regard to Coverage B.1. the Company shall have the *right and duty to defend* the Insured and to investigate any Claim to which coverage under this coverage Part applies pursuant to the following provisions:

1.     Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the applicable Limits of Liability stated in Item 5. of the Declarations. Such Claim Expenses shall reduce the applicable Limits of Liability and shall be applied against the applicable Deductible...

*** 

2.     *The Company shall select defense counsel;* provided, however, that if the law of the state of the Named Insured's domicile, stated in Item 2. of the Declarations, allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. (emphasis added).

The Policy defines "Claim Expenses" as "*reasonable and necessary* amounts incurred by the Company, or by the Insured with the prior written consent of the Company, in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part..."

Package : 000079 of 000085          Presiding Judge: HON. ANN BAILEY SMITH (630350)          Package : 000079 of 000085

Filed        18-CI-005229      09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 20

As the Defense Provision makes clear, Evanston has the right to appoint defense counsel under Coverage B.1. and reserves its right to retain counsel on iHealth's behalf pursuant to the Defense Provision.  Evanston further reserves its rights to deny or limit coverage for Wyatt's fees to the extent such fees are not "reasonable and necessary", or were not incurred in the defense of Claims covered under Coverage B.1.  Please be advised that Evanston is reserving its rights to appoint counsel other than Wyatt to defend iHealth against all Claims under Coverage B.1.

### Coverage B.2. – Data Breach Loss to Insured Coverage

Subject to all of its terms, conditions and exclusions, Coverage B.2 - Data Breach Loss to Insured, provides that Evanston will reimburse iHealth "for the amount of Loss" in excess of the Deductible "which results directly from an Unauthorized Access which occurs during the Policy Period."  As discussed above, the Incident may constitute an Unauthorized Access as that term is defined in the Policy.  Consequently, subject to Evanston's reservation of rights, Evanston will agree to pay amounts constituting Loss under Coverage B.2.

However, the following provisions and exclusions may serve to preclude or limit coverage for amounts sought by the Insured in connection with the Incident under Coverage B.2.

The Policy defines "Loss", in pertinent part, as follows:

1. Forensic Expense and reasonable and necessary costs incurred by the Named Insured to restore with due diligence and dispatch the Named Insured's Electronic Communications System to the condition that existed prior to an Unauthorized Access, including reconstruction of programs, electronic data and media which form a part of the Named Insured's Electronic Communications System;

2. Extra Expense incurred by the Named Insured in continuing the conduct of the Named Insured's business during the period from the time of the discovery of an Unauthorized Access to the time the Named Insured's Electronic Communications System is or can be restored with due diligence and dispatch to the condition that existed prior to an Unauthorized Access;

3. Subject to prior approval by the Company, expenses necessarily incurred by the Named Insured to reduce Loss under Coverage B.2., after an Unauthorized Access has happened and to the extent that such expenses do not exceed the value of the Loss which such expenses are incurred to reduce;

Filed        18-CI-005229      09/07/2018        David L. Nicholson, Jefferson Circuit Clerk

Package : 000080 of 000085                Presiding Judge: HON. ANN BAILEY SMITH (630350)                Package : 000080 of 000085

Filed   18-CI-005229   09/07/2018   David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 21

***

> provided, however, Loss shall not include: (a) any cost or charges
> associated with building, modifying or upgrading the Named
> Insured's Electronic Communications System, or any software,
> security measures or procedures; (b) any cost required to repair,
> build or modify tangible property to comply with any award or
> order by a court, an Authority, arbitration or any similar
> proceeding; (c) any loss of reputation of the Named Insured or
> loss of customer confidence in the Named Insured or the value
> imputed to such loss; (d) expenses incurred by the Insured in
> establishing the amount of any Loss covered under this Coverage
> Part; or (e) loss of business income.

Evanston reserves its rights to deny or limit coverage under Coverage B.2. for any expenses incurred by iHealth in connection with the Incident which do not satisfy the definition of "Loss", including but not limited to costs incurred by iHealth that are not "reasonable and necessary" under subpart 1. of the "Loss" definition.  Specifically, Evanston reserves the right to contest any legal fees incurred by Wyatt that potentially fall within the definition of "Loss" but are not "reasonable and necessary."

Please be advised that pursuant to Section C., Investigation, Loss or Breach Mitigation Expense Payment of the Defense, Settlement and Claim Expenses provision in the Databreach Coverage Part, Evanston will only agree to indemnify iHealth under Coverage B.2. within sixty days after it receives a "sworn Proof of Loss under Coverage B.2. ... provided:  (1) the Insured has complied with all the terms of this Coverage Part; and (2) the Company and the Named Insured have agreed with the items included within and the amounts documented in the Named Insured's sworn Proof of Loss."  Evanston reserves its rights to decline to indemnify iHealth for covered Loss under Coverage B.2. unless and until iHealth has satisfied the requirements set forth in the Investigation, Loss or Breach Mitigation Expense Payment provision and iHealth and Evanston have agreed with the amounts documented in iHealth's POL. Evanston further reserves its right to require iHealth to submit a supplement to its POL to the extent it seeks payment of any amounts not included in its POL.

### Supplementary Payments – Breach Mitigation Expense Coverage

The Databreach Coverage Part also contains a Supplementary Payments Section. Section A. in the Supplementary Payments Section (the "Breach Mitigation Coverage") generally provides that Evanston "shall, subject to the prior written consent of the Company, reimburse the Named Insured up to the Limit of Liability stated in item 5.B. of the Declarations for Supplementary Payments A. Breach Mitigation Expense for the reasonable cost actually incurred by the Named Insured for Breach Mitigation Expense which results directly from an Unintentional Data Compromise which occurs during the Policy Period..." (emphasis added).

Filed   18-CI-005229   09/07/2018   David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229      09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 22

The Declarations provides a $50,000 Supplementary Payments A. Breach Mitigation Expense Limit of Liability.

The Policy defines "Unintentional Data Compromise" as "any computer security incident, intrusion, breach, compromise, theft, loss or misuse of the Named Insured's customer's(s') and/or employee's(s') Private Data." "Private Data" includes, in relevant part, drivers license or other state-issued identification number, social security number, unpublished telephone number, savings account, checking account, credit card or debit card number each when in combination with the security code, access code, password or pin for such account or card number, nonpublic personal information as defined in the Gramm-Leach-Bliley Act, protected healthcare information under HIPAA and private personal information under a Security Breach Notice Law.

We understand the Incident involves access to and distribution of health information belonging to BLHC's patients stored on an iHealth server. As such, the Incident constitutes a "computer security incident, intrusion, breach, compromise, theft, loss or misuse" of iHealth's customer's Private Data and qualifies as an Unintentional Data Compromise. As such, Evanston will reimburse all reasonable costs up to the applicable $50,000 Limit of Liability, which constitute Breach Mitigation Expenses resulting directly from the Incident, subject to a full reservation of rights.

The Policy defines "Breach Mitigation Expense" as expenses incurred with the prior written consent of the Company for:

1.    The services of a public relations professional, or other publicity expenses that are recommended by a public relations professional to respond to any actual adverse publicity in the media, that is the result of an Unauthorized Access or Potential Unauthorized Access;

2.    Expenses, including but not limited to notification and related legal fees, that are incurred to comply with a Security Breach Notice Law and that are the result of an Unauthorized Access or Potential Unauthorized Access; and

3.    Expenses associated with voluntarily providing credit monitoring services to individuals effected by an Unauthorized Access or Potential Unauthorized Access.

Please note that the Breach Mitigation Coverage is limited to "*reasonable* cost actually incurred by the Named Insured for Breach Mitigation Expense." (emphasis added). We understand that Wyatt has submitted invoices totaling $331,170.32 for legal services purportedly rendered in connection with the Incident. Based on our review of the invoices,

Package: 000082 of 000065          Presiding Judge: HON. ANN BAILEY SMITH (630350)          Package: 000082 of 000085

Filed   18-CI-005229   09/07/2018   David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 23

more than 100 hours of Wyatt's time reflected in the invoices is attributable to legal fees purportedly incurred to comply with a Security Breach Notice Law, as well as more than 100 hours on a "timeline" and SO PRO CO analysis. As previously discussed, Evanston reserves its right to deny reimbursement for legal fees incurred by Wyatt which are not "reasonable" as required by the Breach Mitigation Coverage.

We also note that Wyatt, Kroll and Edelman have all incurred Breach Mitigation Expense, as that term is defined and used in the Policy. Specifically, Edelman has submitted an invoice for $22,226.16 for public relations services. Further, the June 20, 2017 statement of work between Kroll and iHealth provides that Kroll will provide notification services to comply with Security Breach Notice Laws and voluntary credit monitoring, which also fall within the definition for Breach Mitigation Expense. iHealth additionally submitted invoices for Vocalink totaling $563.90 for translation services for the notification letters. Finally, as noted above, it appears that Wyatt has spent more than 100 hours providing legal services "to comply with a Security Breach Notice Law." Evanston reserves its right to disclaim coverage for any Breach Mitigation Expense that exceeds the $50,000 Supplementary Payments A. Breach Mitigation Expense Limit of Liability.

Please be advised that pursuant to Section C., Investigation, Loss or Breach Mitigation Expense Payment of the Defense, Settlement and Claim Expenses provision in the Databreach Coverage Part, Evanston will only agree to reimburse iHealth under the Breach Mitigation Coverage within sixty days after it receives "satisfactory written proof of payment of Breach Mitigation Expenses, provided: (1) the Insured has complied with all the terms of this Coverage Part; and (2) the Company and the Named Insured have agreed with the items included within and the amounts documented in the Named Insured's ... satisfactory written proof of payment of Breach Mitigation Expenses." Evanston reserves its rights to decline to reimburse iHealth for Breach Mitigation Expenses unless and until iHealth has satisfied the requirements set forth in the Defense, Settlement and Claim Expenses provision.

### Cooperation Clause

The Common Policy Conditions, which are applicable to all Coverage Parts, including the Databreach Coverage Part. Section K. — Assistance and Cooperation of the Insured in the Common Policy Conditions (the "Cooperation Clause") provides that:

> The Insured shall not, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur any expense without the Company's prior written consent, such consent not to be unreasonable withheld.

Package 000083 of 000085
Presiding Judge: HON. ANN BAILEY SMITH (630350)
Filed   18-CI-005229   09/07/2018   David L. Nicholson, Jefferson Circuit Clerk

Filed          18-CI-005229   09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 24

Wyatt has incurred substantial expense, in part, without Evanston's prior written consent.  Evanston therefore reserves its rights pursuant to the Policy's Cooperation Clause.

**Other Insurance**

Section G. – Other Insurance (the "Other Insurance Provision") provides as follows:

> This insurance shall be in excess of the applicable Deductible stated in the Declarations and any other insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

Please advise immediately to the extent iHealth is insured under any other insurance policies and provide the undersigned with full copies of such policies.  Evanston reserves all rights pursuant to the Other Insurance Provision.

**CONCLUSION**

Evanston's coverage position set forth above is based upon the facts and information presently available to it.  If you have additional information that you believe would impact Evanston's coverage position and ongoing investigation, please forward such information to my attention immediately.

Any continued investigation of the Incident is subject to a reservation of rights due to the coverage issues referenced above.  In bringing these coverage related matters to your attention, Evanston does not waive the right to rely upon any other applicable terms, limitations, conditions or exclusion that may later come to its attention.

This correspondence should not be construed as an exhaustive listing of all applicable terms, provisions, conditions, definitions, exclusions and endorsements in the Evanston Policy, and any additional rights that Evanston may have under such policy or at law or in equity.  This reservation of rights does not waive, modify or otherwise alter the terms and conditions of the Evanston Policy and neither this correspondence nor any previous correspondence on behalf of Evanston should be construed as a waiver or estoppel of any of Evanston's rights or defenses under the Evanston Policy or at law or in equity with respect to the Incident as all such rights are expressly reserved.

Package: 000084 of 000085

Presiding Judge: HON. ANN BAILEY SMITH (630350)

Package: 000084 of 000085

Filed          18-CI-005229     09/07/2018          David L. Nicholson, Jefferson Circuit Clerk

Mr. Venkat Sharma
December 20, 2017
Page 25

If you have any questions or concerns, please contact me directly. We look forward to receiving the information requested herein.

Very truly yours,

/s/ Todd M. Rowe

Todd M. Rowe

/s/ Lindsey D. Dean

Lindsey D. Dean

cc: Kathie McDonald-McClure (kmcclure@wyattfirm.com)
Cincinnati Intermediaries, Inc. (soliver@cintermed.com)
Joseph Niemczyk (jniemczyk@markelcorp.com)

Package: 000085 of 000085
Presiding Judge: HON. ANN BAILEY SMITH (630350)